FREDERICK LINDE RYON, Plaintiff, *v*. JOHN WANAMAKER, NEW YORK, INC., and JOHN J. DIXON, Defendants.

(Supreme Court, Queens Special Term, July, 1921.)

Equity — assignments of mortgages, induced by misrepresentation, set aside — husband and wife — husband not liable for goods sold to wife upon her credit.

> Equity will aid to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud.
>
> A husband is not liable for goods sold to his wife solely upon her credit although they were living together at the time and he saw her in the possession of the articles purchased.
>
> The bills of plaintiff for goods purchased from defendant on a personal charge account during the eight years prior to his marriage amounted to a little over $500. He married, and the woman, who led him to believe that she was the beneficiary of a very large estate then in process of settlement, after living with him for less than ten months deserted him and is now in another state in prison for having defrauded a hotel. During three months after the marriage the defendant permitted her to incur an indebtedness of over $16,000, of which plaintiff had no notice until, in an envelope bearing defendant's stamp and addressed to his wife, he found the itemized bills. *Held,* that in an action to set aside certain assignments of mortgages to secure the wife's indebtedness, the execution of which assignments was induced by the misrepresentation of the defendant's employees and lawyers that plaintiff was responsible for all debts contracted by his wife while she was living with him, the plaintiff was entitled to judgment although no fraud on defendant's part was proved and the theory of constructive fraud was not available to plaintiff.

ACTION to set aside assignments of mortgages.

Henry A. Uterhart, for plaintiff.

Hedges, Ely & Frankel (Richard Ely, of counsel), for defendants.

Supreme Court, July, 1921.          [Vol. 116.

Dike, J.   In equity plaintiff institutes this action to set aside certain assignments of mortgages for $14,250 made to the defendant, John J. Dixon, an employee of the defendant, John Wanamaker, New York, Inc.   I quote from the decision of Mr. Justice Scudder upon the motion for a judgment on the pleadings herein as follows: '' Plaintiff sues to set aside two assignments of mortgages on the ground that he was induced to make the assignment by the fraudulent representations of the defendant corporation, John Wanamaker, New York, that he was liable for a bill of merchandise which his wife had purchased.   It appears from the allegations of the complaint that plaintiff had married a woman who after living with him less than ten months deserted him. During the period of their cohabitation plaintiff spent on her over $9,000 although his income was less than half that sum.   She also ran up large bills with various retail dealers and other persons.   Among these bills was the bill of the defendant John Wanamaker, New York, for $16,292.81.   *   *   *   The complaint alleges that said defendant supplied plaintiff's wife with merchandise purchased by her on her exclusive credit, and not upon the credit of plaintiff or as his agent, but as sole principal in said transactions and that she was at all times so recognized by the defendant John Wanamaker, New York.   *   *   *   that the defendant, by its employees and lawyers represented to plaintiff that notwithstanding the merchandise had been furnished plaintiff's wife upon her sole credit, the liability of the wife of said plaintiff was plaintiff's liability, since plaintiff was the husband and responsible for all debts contracted by his wife while she was living with him; that up to the time of the execution of the assignments of the mortgages drawn by said defendant's lawyers plaintiff consulted no one and was advised by no one

in regard to his rights, but relied upon and believed the aforesaid statement of his liability for his wife's indebtedness made by said defendant's employees and lawyers."

Plaintiff here seeks equitable relief against his act in making the assignments, upon the ground he so acted under a mistake or ignorance of material facts. Position of the defendant is that the plaintiff is responsible for the indebtedness in question incurred by his wife and that the assignments in question were made upon due consideration to liquidate as far as possible the debts contracted by his wife, with defendant.

The evidence discloses a most amazing situation. As defendant's attorneys have very properly said in their brief, " the story needs the pen of a novelist." I might even add that as I look at it, it requires the pen and imagination of a scenario writer. The grievous situation here disclosed has been brought about by unconscionable acts of a young woman who possessed in the highest degree the clever methods of the trained adventuress and in whose hands this refined and credulous plaintiff was her easy prey. I have not found in any up-to-date dictionary a definition of the word " vamp," so frequently and currently used nowadays, but if the word can be defined as a female in pursuit of the male, whose physical attractions are as *marked* as her moral qualities are *missing,* then I may properly term the woman in the case, a " vamp." The result of her calculating activities has resulted on the one hand in the tragic disillusionment of a very credulous young man who, through her, has seen his little fortune shattered and his hopes of happy married life destroyed, and on the other hand the serious financial loss that must follow if the plaintiff in this action is to salvage what remains of his

depleted property — the two mortgages now in the possession of the defendant.

The plaintiff, while a student in Princeton University, as appears by the evidence, opened a charge account with the defendant in 1911. At that time inquiries as to his financial standing were instituted by the defendant and his father replied to defendant's inquiries to the effect that his son was good for whatever he bought. The statement of his purchases from the defendant from 1911, the time of the beginning of the granting of the credit by the defendant, is interesting. In that year the total purchases amounted to $23.75; in 1912 to $61.75; in 1913 to $26.25; in 1914 to $110.30; in 1915 to $139; in 1916 to $57.85; in 1917 to $56.50; in 1918 to $39.75, the total of the items purchased on this account from 1911 to 1918, inclusive, being $515.15. Plaintiff was led to believe by his wife that she was the beneficiary of a very large estate which was in the process of settlement. Upon numerous occasions she borrowed substantial sums from her husband to meet charges necessary in the alleged settlement of this mythical estate. Plaintiff was prevented from meeting any of the distinguished relatives that his wife frequently mentioned, upon the ground that they were angry at her for having married him, but that some of the elaborate articles that came to their modest flat were wedding presents. Plaintiff during all this time had authorized his wife to make purchases for their house. His attitude upon the stand convinces me that he absolutely believed in his wife, relied upon all of these statements, and not until he saw the July account from defendant amounting to $662 and addressed to Mrs. Ryon did he know of any extraordinary purchases by his wife. In this bill, clothing for his wife amounting to $245.08 and an item of $110 for a diamond brooch, were included. The

discovery of this bill was the occasion of a lively discussion wherein plaintiff told his wife that further department store bills were not to be run up, and he paid this bill with his own check. Until December plaintiff had no idea that his wife had violated her promise made to him as to purchases. He then discovered in a bulky envelope addressed to her and bearing the Wanamaker stamp, the evidence that she had broken her promise, and he found the detailed bills for three months amounting to $16,292.81. Upon this discovery an explanation was sought by plaintiff, from his wife, she avoiding the same upon the plea of ill health, and shortly after abandoned the plaintiff, and as was stated during the trial, this young woman who has wrought such havoc is now in prison in California for having defrauded a hotel.

The complaint alleges fraud upon the part of the defendant's representatives and agents. I do not feel that fraud has been proved. Nor could the plaintiff recover, therefore, under the theory of constructive fraud. But the plaintiff may prevail, it seems to me, although he fails in his proof as to fraud, and that is under the doctrine that equity will aid to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud. The distinction must be kept in mind between actions at law for deceit and those in equity for rescission. In the former the action fails unless the fraud and deceit alleged are proved. In the latter cases that is not required. Crane, J., in *Bloomquist* v. *Farson*, 222 N. Y. 375, 380, says: " The fact that the plaintiffs have alleged fraud and deceit is not fatal to the action provided the proof establishes misrepresentations and that these are material, influencing the bargain (*Hammond* v. *Pennock,* 61 N. Y. 145).''

And as was said in the illustrative case of *Dayton*

v. *American Steel Barge Co.*, 76 App. Div. 454, 462:
" There is a wide difference between the case of an
ordinary action for deceit and that of an attempted
enforcement of an executory promise. In the latter
case innocent misrepresentation relieves from the per-
formance of that promise (Andrews, Ch. J., *Kountze*
v. *Kennedy*, 147 N. Y. 129). Rescission comes from
a false affirmation of a material fact though innocently
made (*Smith* v. *Richards*, 13 Pet. 26; *MacFerran* v.
*Taylor*, 3 Cranch 270)."

In *Leary* v. *Geller*, 224 N. Y. 56, 59, Crane, J., says:
" The statement made by her to the plaintiff that
delivery had been made was vital upon the question
of title. The plaintiff believed her and acted accord-
ingly. If he were misled and the representations were
false in fact, a cause of action exists in equity. The
complaint sets forth such a case, and the fact that
the proper relief is not demanded is, in this instance,
quite immaterial."

Defendant urges the agency of the wife as its pro-
tection. The common law doctrine of the agency of
the wife for her husband exists where the wife pur-
chases " necessities " for the household, but ceases
when she makes such purchases upon her exclusive
credit. In the former case, however, the goods must
be of a class that would ordinarily be necessary " in
view of the station in life of the husband and wife."
The evidence herein conclusively shows that Ryon
furnished abundantly to his wife all that could be
expected; in fact, he was " bled white " financially
by her, expending in seven months $9,000. The
agency of the wife is a question of fact, not of law.
The rule of responsibility of the husband for " necessi-
ties " purchased by the wife is so well established as
to require no discussion of authority. And it is equally
well settled that where credit is given to the wife

solely, the husband is not liable, although they are living together at that time, and the husband sees her in possession of the articles. The admirable discussion of the question by Shearn, J., in *Wickstrom* v. *Peck,* 179 App. Div. 855, and with the cases cited, clearly shows the law upon this subject and reiterates the rule. Haight, J., in *Wanamaker* v. *Weaver,* 176 N. Y. 75, 81, discusses the question of the wife's agency, and the English case of *Morel Bros.* v. *Earl of Westmoreland,* L. R. (1 K. B. 1903) 64, is quoted with approval: "There is no real hardship to tradesmen involved in such cases as this. They should understand that the question is always one of agency and it is incumbent on them to prove the wife's agency. They can easily protect themselves from any great risk."

The cases illustrating this principle are *Griffin* v. *Banks,* 37 N. Y. 621; *Kenny* v. *Meislahn,* 69 App. Div. 572; *De Brauwere* v. *De Brauwere,* 203 N. Y. 460; *Wanamaker* v. *Weaver, supra.* As to what are " necessities " becomes of interest in this case. The " necessities " for a household where the husband was rated "A1" in Dun's would differ very materially from those deemed appropriate for a household where the husband was engaged in subway excavation. In the instant case, Ryon had maintained a charge account with the defendant since 1911. Defendant had, at the beginning and at various other times, instituted inquiries as to plaintiff's financial responsibility. Actually, his financial standing had not changed since 1911, unless we except the addition of his pay for a short time when he was a yeoman in the navy during the war.

While equity will not relieve a party by reason of a loss through a pure mistake of law, it will analyze with care any evidence that may indicate an unfair

advantage taken of one seeking relief. In *Donaldson v. Supreme Council, C. B. L.,* 180 N. Y. Supp. 598, 601, Scudder, J., says: " It is well settled that, where there is a mistake of law on one side and either positive fraud on the other, or inequitable, unfair, and deceptive conduct which tends to confirm the mistake and conceal the truth, it is the right and duty of equity to award relief."

Whether the misrepresentation was or was not intended does not alter the situation. At the first meeting between the plaintiff and the representative of the defendant, when this enormous indebtedness was discussed, it was stated " You know you are responsible for your wife's debts." The statement of plaintiff's responsibilities is in effect repeated to him by still another in defendant's credit department, and on the stand one of the defendant's attorneys said that in his opinion plaintiff was liable for his wife's debts so that the defendant's point of view herein is clearly and virtually defined. Was this a mistake of law on plaintiff's part by reason of which he cannot recover? I do not think so under the authorities that seem to me to control this controversy. I am not going to hold defendant's agent guilty of fraud. The allegation of fraud in the complaint has not been sufficiently proved and the theory of constructive fraud would not be available to plaintiff, but under the rule stated by Scudder, J., in *Donaldson* v. *Supreme Council, supra,* I think the plaintiff has proved his case. The defendant attempts to distinguish the cases cited by the plaintiff, to the effect that equity will relieve where there has been a fraudulent misrepresentation as to the law, by claiming that these cases were almost uniformly cases where from the situation of the parties a *quasi* fiduciary relationship exists, but while it is true that in most of the cases referred to there was

a *quasi* fiduciary relationship the courts, in the opinions, did not in terms limit to that relationship the rule declared of equitable jurisdiction to relieve. *Haviland* v. *Willets,* 141 N. Y. 35. And in the early case of *Cooke* v. *Nathan,* 16 Barb. 342, the case was bare of any sort of fiduciary relationship or *quasi* fiduciary relationship and none the less the court applied the rule that if one of the parties is in truth ignorant of a matter of law involved in a contract, and the other knows him to be so, and takes advantage of the fact, the court will relieve. The compelling evidence that causes me to find that the plaintiff has prevailed is the striking contrast between the bills of the plaintiff with the defendant prior to his marriage and those bills permitted by the defendant to be incurred by plaintiff's wife. This defendant, one of the greatest department stores in the country, with an elaborate system of credit, would, had they been keenly alert, have stopped this woman's mad expenditure. This contrast between plaintiff's personal total bill for eight years, amounting to $515.15 and that of the three months' indebtedness of $16,292.81, incurred by plaintiff's wife and of which he had no notice, leads me to find the defendant the unfortunate one to suffer for such lack of attention to this account. I therefore give judgment for the plaintiff. Submit judgment and findings.

Judgment accordingly.