OPINION OF THE COURT
 

 Alexander, J.
 

 Defendant U.S. News and World Report repudiated its contract with plaintiff American List Corp. whereby defendant agreed to rent, over a 10-year period, mailing lists of the
 
 *41
 
 names of college students to be compiled by plaintiff. The primary issue presented on this appeal is whether the damages suffered by plaintiff are general, thus requiring only that plaintiff prove that they flowed naturally from the breach, or whether the damages were special damages for lost profits which, to be compensable, must have been foreseeable and within the contemplation of the parties at the time the contract was made. We conclude that the damages sought by plaintiff are general damages which were sufficiently proved at trial. We further conclude, however, that Supreme Court erred in calculating the amount of these damages because in discounting to present value the total due under the contract, the court improperly considered the risk that the plaintiff would be unable to perform the contract in the future. Accordingly, we modify the order of the Appellate Division and remit to Supreme Court for the determination of a proper discount factor and a recalculation of damages.
 

 I
 

 Defendant publishes a national weekly news magazine which, in 1983, had the third largest circulation for such magazines in the Nation. In an attempt to expand its circulation by entering the college student market, defendant negotiated an agreement with plaintiff whereby, for a 10-year period, plaintiff would compile and rent to defendant mailing lists of college student names. Plaintiff had previously produced such mailing lists for high school, but not college, students. Consequently defendant agreed to finance plaintiffs start-up costs by paying a larger fee per name in the first five years of the arrangement. A schedule of the estimated number of names to be provided and the fees to be paid by defendant as well as the estimated losses and profits of plaintiff in each of the 10 years contemplated by the agreement was appended to the agreement. In addition, the agreement, which was drafted by defendant, provided that "[U.S. News and World Report has] agreed to take as much as 25% more names than the estimated compilation at the cost pername
 
 [sic]
 
 shown in years one through five.” The agreement further provided for an annual review of the estimated figures for the purpose of adjusting the cost per name to be charged to defendant.
 

 The agreement was signed by the parties on January 25 and 26, 1984. Martin Lerner, plaintiffs president, signed on behalf
 
 *42
 
 of plaintiff and Joseph Acerno, the vice-president of circulation, signed on behalf of defendant. One year after the contract was signed, defendant was purchased by a new owner and Acerno was replaced by Jacob Weintraub. Weintraub canceled the contract in September 1985 although prior to that cancellation, defendant had accepted and paid for names provided by plaintiff for three mailings conducted over a one and one-half-year period.
 

 Plaintiff commenced this action for breach of contract. After a bench trial, Supreme Court found defendant liable and awarded damages of $1,449,344 for the breach, which sum constituted the balance due plaintiff on the contract for the years 1985 to 1994, as reduced to present value. In assessing the present value of the moneys due plaintiff under the 10-year contract, the court used a "realistic discount factor of 18%”. On the parties’ cross appeals, the Appellate Division affirmed, without opinion. Both parties appeal by leave of this court.
 

 Defendant argues that the damages awarded to plaintiff are actually "lost future profits” which are special damages and not compensable absent a showing that they were foreseeable and contemplated by the parties at the time the contract was made
 
 (see, Kenford Co. v County of Erie,
 
 67 NY2d 257)
 
 (Kenford I),
 
 a showing plaintiff failed to make because the lost future profits it seeks, like the lost future profits sought in
 
 Kenford I,
 
 are too speculative for calculation. Plaintiff counters that it seeks general rather than special damages and that it has sufficiently proven that its damages are the natural and direct consequence of defendant’s breach of their agreement.
 

 On its cross appeal, plaintiff argues that Supreme Court erred in its calculation reducing to present value the total amount due plaintiff under the 10-year contract and in determining that plaintiff was not entitled to compensation for an increase of 25% more names which defendant was obligated to accept during the first five years of the contract period.
 

 II
 

 We reject at the outset defendant’s contention that the courts below improperly awarded plaintiff "lost future profits” which are special damages not sufficiently proven at the trial.
 

 The distinction between general and special contract damages is well defined but its application to specific contracts and controversies is usually more elusive. General damages are
 
 *43
 
 those which are the natural and probable consequence of the breach
 
 (Kenford Co. v County of Erie,
 
 73 NY2d 312, 319)
 
 (Kenford II),
 
 while special damages are extraordinary in that they do not so directly flow from the breach. These extraordinary damages are recoverable only upon a showing that they were foreseeable and within the contemplation of the parties at the time the contract was made
 
 (Kenford II,
 
 73 NY2d, at 319,
 
 supra; Chapman v Fargo,
 
 223 NY 32, 36;
 
 Cramer v Grand Rapids Show Case Co.,
 
 223 NY 63;
 
 Wakeman v Wheeler & Wilson Mfg. Co.,
 
 101 NY 205;
 
 Hadley v Baxendale,
 
 9 Exch 341, 156 Eng Rep 145). Thus in
 
 Kenford I
 
 (67 NY2d 257,
 
 supra)
 
 the nonbreaching party to a contract for the management of a domed sports stadium claimed special damages in the form of the lost future profits which that party would have received from its operation of the stadium. We concluded that the claimed lost future profits could not be recovered because it could not be demonstrated that such damages were caused by the breach, the alleged loss was not capable of proof with reasonable certainty, and it had not been proven that those damages were within the contemplation of the parties at the time the contract was made
 
 (id.,
 
 at 261-263;
 
 see also, Hadley v Baxendale,
 
 9 Exch 341, 156 Eng Rep 145,
 
 supra
 
 [failure to prove foreseeability of claimed damages of lost profits of mill operation resulting from common carrier’s breach of contract to timely deliver broken mill shaft for repairs]).
 

 Here, by contrast, it is clear that plaintiff has sought only to recover moneys which defendant undertook to pay under the contract, thereby assuming a definite obligation. By the express terms of the agreement drafted by defendant, its appended schedule reflected the "cost of this joint venture” to defendant and set forth the fees to be paid to plaintiff for a specific number of names to be provided by plaintiff in each of the 10 years contemplated by the arrangement. That schedule also contemplated that plaintiff would suffer losses during the first five years because of its additional start-up costs, and defendant agreed to pay a larger fee per name for names provided during that period. These contemplated losses, however, do not alter the fact that defendant agreed to pay a specific amount over a period of 10-years — a sum explicitly stated in the contract schedule to be $3,027,500 and thus unquestionably within the contemplation of the parties. Moreover, contrary to defendant’s contention, the fact that plaintiff did not incur costs as great as anticipated during part of the
 
 *44
 
 time in which the parties had contemplated that plaintiff would suffer losses is irrelevant to defendant’s obligation under the agreement. Thus, as the trial proof establishes, plaintiff has sufficiently demonstrated that the moneys it seeks — the present value of the balance owed by defendant under the contract less the costs reasonably saved by plaintiff as a result of the breach — are general damages flowing as a natural and probable consequence of the breach.
 

 Ill
 

 Turning to the calculation of these general damages, we conclude that Supreme Court erred in discounting to present value the balance due under the contract by a figure which incorporated a consideration of plaintiff’s ability to perform the contract in the future.
 

 The doctrine of anticipatory breach is applicable to bilateral contracts which contemplate some future performance by the nonbreaching party
 
 (Long Is. R. R. Co. v Northville Indus. Corp.,
 
 41 NY2d 455, 466-468;
 
 compare, Kelly v Security Mut. Life Ins. Co.,
 
 186 NY 16, 19 [doctrine inapplicable to contracts for the payment of money only]). Pursuant to this doctrine, a wrongful repudiation of the contract by one party before the time for performance entitles the nonrepudiating party to immediately claim damages for a total breach
 
 (Long Is. R. R. Co. v Northville Indus. Corp.,
 
 41 NY2d, at 463,
 
 supra).
 
 The nonrepudiating party need not, however, tender performance nor prove its ability to perform the contract in the future
 
 (Nichols v Scranton Steel Co.,
 
 137 NY 471, 485;
 
 Windmuller v Pope,
 
 107 NY 674;
 
 see also, Tenavision, Inc. v Neuman,
 
 45 NY2d 145, 150 [buyer’s repudiation of contract governed by UCC 2-610 eliminates need for further performance by the seller];
 
 see generally,
 
 4 Corbin, Contracts § 978, at 925 [willingness and ability to perform need not continue after wrongful repudiation]). Rather, the doctrine relieves the nonrepudiating party of its obligation of future performance and entitles that party to recover the present value of its damages from the repudiating party’s breach of the total contract
 
 (Long Is. R. R. Co. v Northville Indus. Corp.,
 
 41 NY2d, at 468,
 
 supra; Nichols v Scranton Steel Co.,
 
 137 NY, at 487-488,
 
 supra).
 

 Defendant argues that in discounting the total amount due under the contract to its present value, the court may factor in the risk that the nonrepudiating party will be unable to perform the contract in the future. Such a rule, however, does
 
 *45
 
 violence to the settled principles of the doctrine of anticipatory breach because it would require the nonrepudiating party to prove its ability to perform in the future, despite the fact the doctrine is intended to operate to relieve the nonrepudiating party from that very performance.
 

 In calculating the damages due plaintiff in this case, Supreme Court properly computed the total due plaintiff under the contract, taking into account the costs reasonably saved by plaintiff as a result of the breach and subtracting the amount already paid by defendant for mailing lists it received in 1984 and 1985. Applying the rule of
 
 Long Is. R. R. Co. v Northville Indus. Corp. (supra)
 
 and
 
 Nichols v Scranton Steel Co. (supra),
 
 the court then discounted the balance due under the contract to its present value. The record demonstrates, however, that the 18% discount figure chosen by the court necessarily included a consideration of the risk that plaintiff would be unable to perform the contract in the future. Plaintiff’s expert opined that a 10% discount rate was appropriate. Defendant’s expert disputed this figure, testifying that a determination of the present value of money to be paid in the future required consideration of several factors and concluded that consideration of some of these factors justified a discount factor of up to 14%. It was the consideration of plaintiff’s ability to perform the contract in the future, however, which led defendant’s expert to the conclusion that a discount factor of 14% to 20% was appropriate.
 

 Thus, in adopting the 18% figure, Supreme Court necessarily credited the testimony of defendant’s expert as to the valuation of the risk that plaintiff would be unable to perform the contract in the future. As this factor may not properly be considered where, as here, damages are sought by reason of an anticipatory breach of the contract, the matter must be remitted to Supreme Court for a determination of the appropriate discount factor to be applied and a recalculation of damages.
 

 IV
 

 Plaintiff also argues that Supreme Court erred in calculating the total amount due under the contract because the court failed to award damages for 25% more names that defendant was obligated to accept during the first five years of the contract period. The argument must be rejected. The contract indicates that unlike the fixed number of names to be provided to defendant each year, plaintiff was not obligated to
 
 *46
 
 provide these additional names and defendant was obligated to accept the additional names only if they were provided. Thus as to these additional names, plaintiff was required to prove its ability to provide them. Supreme Court’s contrary finding, affirmed by the Appellate Division and having support in the record, is beyond our review.
 

 We have considered defendant’s remaining contention and conclude that it is without merit.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, the case remitted to Supreme Court for determination of an appropriate discount factor and a recalculation of damages, and, as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacos a concur.
 

 Order modified, with costs to plaintiff, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.