PAY TEL SYSTEMS, INC., Plaintiff,

v.

SEISCOR TECHNOLOGIES, INC., and Raytheon Company, Defendants.

TRIDENT TECHNOLOGIES, INC., Trident Telecommunications Systems I, and Trident Telecommunications Systems II, Plaintiffs,

v.

SEISCOR TECHNOLOGIES, INC., and Raytheon Company, Defendants.

Nos. 88 Civ 2078 (VLB), 88 Civ 5676.

United States District Court, S.D. New York.

April 26, 1994.

Steven M. Kramer, Kazlow & Kazlow, New York City, for plaintiffs.

Mayer, Brown & Platt, New York City, Jeffrey F. Shaw, Briggs & Morgan, St. Paul, MN, for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

These cases brought pursuant to the diversity of citizenship jurisdiction of the court present issues concerning alleged defects in private pay telephones manufactured by defendant Seiscor Technologies, Inc., ("Seiscor"), an indirect subsidiary of defendant Raytheon Company ("Raytheon"). Defendants have moved for summary judgment dismissing the complaints in both cases. The motions are conditionally granted, and the complaint will be dismissed unless plaintiffs take the actions described below within forty-five (45) days to correct deficiencies in their claims and the evidence submitted in support of them outlined in this memorandum order.

### II

■ Complete diversity of citizenship as required under 28 U.S.C. § 1332 is lacking in 88 Civ 5676 (the "Trident case") because both plaintiff Trident Telecommunications Systems I ("Trident I") and Raytheon are citizens of Massachusetts. Trident I is a partnership, the general partner of which, and many of the limited partners of which reside in that state; Raytheon's principal place of business is in that state, making it a citizen of that state under 28 U.S.C. § 1332(c). In order to avoid dismissal of the Trident case on that ground, plaintiffs must file an amended complaint dropping Trident I, Raytheon or both as parties. If plaintiffs elect to make such an amendment, they shall also show cause why they should not be required to pay defendants' legal costs in connection with the diversity of citizenship issue pursuant to 28 U.S.C. § 1927 or Fed.R.Civ.P. 11, or both.[1]

### III

■■ Numerous assignments have been executed by plaintiffs with regard to claims at issue in these cases. Where complete assignments have been made, the assignee is the real party in interest and a necessary party under Fed.R.Civ.P. 19. To omit such parties would risk generating subsequent duplicative litigation. Assertion of residual overlapping claims by the assignor without joining the assignee or establishing waiver of such claims by an assignee is improper and their pursuit would be an abuse of the litigation process. In some cases it is not clear that all assignees are parties to the suits now pending. In order to be permitted to proceed, plaintiffs must:

(a) Eliminate from the respective complaints all claims by an assignor with respect to rights assigned to another person or entity absent an express reservation of any claims retained;

(b) Add as voluntary or involuntary plaintiffs any assignee or financing entity having or which may assert title to any claims asserted by plaintiffs in the case involved. This must be done regardless of whether or not existing plaintiffs have or claim to have a residual or reserved right of any kind to sue on a claim. In the alternative, plaintiffs may drop the claim involved. If additional necessary parties would destroy diversity of citizenship, one or more parties with the same citizenship must be omitted from the case or the relevant claims dropped from the complaint involved.

Affidavits (subject to Fed.R.Civ.P. 11 and 28 U.S.C. § 1927) must be submitted by a knowledgeable person that the steps called

---

1. Since it has not been established that the notice necessary to a Rule 11 application has not been filed by defendants, who have not raised the sanctions issue in their papers, it would be inappropriate and contrary to the goals of Fed. R.Civ.P. 1 (the "just, speedy and inexpensive" determination of every action) to prolong the Trident litigation to pursue that issue should the complaint not be amended, and hence is dismissed.

for by this part III have been taken with completeness.

## IV

■ The defendant Raytheon has offered evidence that its indirect subsidiary Seiscor operates as an independent entity, but has not provided information concerning whether or not Seiscor is insolvent or undercapitalized. This is a relevant consideration where piercing the corporate veil is requested. See generally *Lowen v. Tower Asset Management*, 653 F.Supp. 1542, 1551–56 (S.D.N.Y.), *aff'd* 829 F.2d 1209 (2d Cir.1987); Gelb, "Piercing the Corporate Veil—the Undercapitalization Factor," 59 Chi–Kent L.Rev. 1 (1982); Practising Law Institute, *Responsibility of the Corporate Parent for the Activities of a Subsidiary* (1990); 1 Fletcher, *Cyclopedia of Corporations* § 44.1 (perm.ed. 1983); Note 99 Harv.L.Rev. 986 (1986).

■ Plaintiffs have made arguments that when analyzed amount to implying that Seiscor is acting as an agent for Raytheon because customers were aware of or told of the connection between the two companies. Mention of Raytheon during negotiations between Seiscor and plaintiffs, forwarding of communications to and from Raytheon, references to Seiscor as part of the Raytheon family, and similar events are insufficient to make Raytheon responsible for Seiscor's contracts. Statements supported by the appearance of authority to speak for Raytheon, and which specifically purport to commit Raytheon would be sufficient to do so. See *IBM v. United Home*, 848 F.Supp. 495 (S.D.N.Y. 1994), *describing and vacating pursuant to settlement, IBM v. United Home*, 1994 WL 86597 (S.D.N.Y. March 3, 1994). No evidence of this kind has been set forth.

In each case, plaintiffs must drop Raytheon as a defendant, provide information which would justify piercing the corporate veil, or specify discovery needed to establish a basis for such piercing. In the latter instance, plaintiffs must simultaneously serve and attach whatever discovery requests or notices are deemed necessary for that purpose.

## V

■ Plaintiffs contend that open-ended damages can be recovered for lost profits because successes hoped for when the relevant contracts were entered into, did not materialize. Case law is to the contrary: "Contract law has long been held to preclude recovery for speculative damages." *Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 667 (Fed.Cir.1992); see *Four Points Shipping & Trading, Inc. v. Poloron*, 846 F.Supp. 1184 (S.D.N.Y.1994).

■■ On a motion for summary judgment challenging the existence of monetary injury, plaintiffs must provide specifics for their claims to survive. *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order for their claims to meet this test, plaintiffs must show specific sales of defective goods and costs incurred because of the need to repair or replace those specific goods, or to refund monies received or accept nonpayment or reduced payments for those goods. Such events must be shown to lead to specific amounts lost because of defects in the products provided by defendants, or other equally clearly definable losses.

■ In submitting such evidence, plaintiffs cannot rely on the assumption that they held requirements contracts with any of the defendants. Such a contract in writing does not exist, and it would be implausible absent evidence not provided that a commitment of this type would be made without a writing. See *Durable, Inc. v. Twin County Grocers*, 839 F.Supp. 257 (S.D.N.Y.1993); see also *Wallace Oil Co. v. Michaels*, 839 F.Supp. 1041 (S.D.N.Y.1993).

To infer an open-ended commitment to supply plaintiffs with goods beyond any specific orders agreed to without a specific writing to that effect would be "implausible" and must be supported by more other evidence than would otherwise be needed for the claim to survive under Fed.R.Civ.P. 56. *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A commitment of this scope, which would normally be expected to be in writing, must be rejected absent evidence to overcome the improbability. *Dura-*

*ble, Inc. v. Twin County Grocers,* 839 F.Supp. 257 (S.D.N.Y.1993); *Greystone Partnerships v. Koninklijke Luchtvaart Maatschappij N.V.,* 815 F.Supp. 745, 756–57 & n. 13 (S.D.N.Y.1993); *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 478 (S.D.N.Y. 1988).

Absent such safeguards, the result would be to risk "trapping parties in surprise contractual obligations that they never intended." *TIAA v. Tribune Co.,* 670 F.Supp. 491, 497 (S.D.N.Y.1987). See also *Consarc Corp. v. Marine Midland Bank,* 996 F.2d 568 (2d Cir.1993); *Arcadian Phosphates v. Arcadian Corp.,* 884 F.2d 69, 72–73 (2d Cir.1989); *Winston v. Mediafare,* 777 F.2d 78 (2d Cir.1985); *R.G. Group v. Horn & Hardart,* 751 F.2d 69 (2d Cir.1984).

Plaintiffs attempt to project their claim of an implicit commitment to supply unordered goods (to be of acceptable quality) into the future so far as to amount to an obligation to make it possible for plaintiffs to succeed in their business, even to the point of successfully going public and making that a profitable step. A series of assumptions concerning future events of this nature would amount to impermissibly requiring vendors of products selling to distributors to provide insurance that resulting potential pyramids of business gambles would be crowned with success.

Even if a good product is made available to a distributor by a manufacturer, numerous other events may destroy the hoped-for profitability of the venture. For example, the public's need or taste for a product may dry up, regulatory initiatives may make it less profitable or even unprofitable,[2] rival distributors[3] or rival industries may take the place of the item in the marketplace, financial markets may prove uninterested in the offering at the time proffered,[4] or investors may be dissatisfied with management's efforts or disclosures of problems encountered.[5] See generally *American List Corp. v. U.S. News & World Report,* 75 N.Y.2d 38, 549 N.E.2d 1161, 550 N.Y.S.2d 590, 592 (1989); *Manniello v. Dea,* 92 A.D.2d 426, 429, 461 N.Y.S.2d 582, 585 (3d Dept.1983); *Robert T. Donaldson, Inc. v. Aggregate Surfacing,* 47 A.D.2d 852, 366 N.Y.S.2d 194, 196 (1975); *Four Points v. Poloron,* 846 F.Supp. 1184 (S.D.N.Y.1994).

## VI

Plaintiffs rely on claims of fraud and misleading conduct, but have not explained how deliberate fraud or misleading behavior has been shown or inferred. Such evidence must be specified or such claims dropped from the complaints. The court may insist on such evidence regardless of whether specifically requested by the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Jacobson v. Cohen,* 151 F.R.D. 526 (S.D.N.Y.1993).

## VII

Defendants' contention that summary judgment should be granted based upon Seiscor's Coinphone Product Warranty accepted by plaintiff Trident Technologies, Inc. lacks merit but warrants discussion here because plaintiffs may seek to satisfy the deficiencies set forth above.

Seiscor's warranty purports to disclaim any unspecified "warranty, express or implied ... to any dealer, customer, owner, or user." With regard to consumers, such a blanket disclaimer violates the Consumer Product Warranty Act, 15 U.S.C. § 2308, as it relates to implied warranties of merchantability. Where a document con-

---

**2.** See, e.g., Telephone Operator Consumer Services Improvement Act, Public Law 101–435, 104 Stat. 986 (1990), amending 47 U.S.C. § 226; New York State Truth in Dialing Act, amending Public Service Law 90(3) and General Business Law 206–e, as well as adding Public Service Law 92–c; see also N.Y.Gen.Bus.Law 336–b; 399–p.

**3.** Exclusive arrangements are not readily inferred without written commitments or other evidence replacing the need for them; they must also pass muster under the Rule of Reason under the antitrust laws. See generally *Durable, Inc. v. Twin County Grocers,* 839 F.Supp. 257 (S.D.N.Y. 1993); *Wallace Oil v. Michaels,* 839 F.Supp. 1041 (S.D.N.Y.1993).

**4.** See generally *TIAA v. Coaxial Communications,* 807 F.Supp. 1155 (S.D.N.Y.1992).

**5.** See, e.g., *Westwood v. Cohen,* 838 F.Supp. 126 (S.D.N.Y.1993) and authorities cited.

tains illegal and misleading provisions such as this one, it would be inappropriate to grant summary judgment on the basis of its existence without full inquiry concerning whether or not those protected by the statute involved were injured and if so what recompense was provided. See generally Note, *Misrepresentation of Law*, 32 Colum.L.Rev. 1018 (1932); Kulkin, *On the Knowing Inclusion of Unenforceable Contract and Lease Terms*, 56 U.Cinc.L.Rev. No. 3 at 845 (1988); see also *Ryon v. John Wanamaker, New York, Inc.*, 116 Misc. 91, 190 N.Y.S. 250 (Sup.Ct.1921), *aff'd* 202 A.D. 848, 194 N.Y.S. 977 (1922), *aff'd* 235 N.Y. 545, 139 N.E. 728 (1923); Special Committee on Consumer Affairs, *Consumer Products Warranty Fulfillment*, NYLJ Nov. 28, 1980 at 1.

The warranty of merchantability is a cornerstone of commercial law in dealings between merchants as well as with consumers, and hence cannot be disclaimed unless the disclaimer is both clear and conspicuous and agreed to by the customer. See Prosser, *The Implied Warranty of Merchantable Quality*, 27 Minn.L.Rev. No. 2 at 117 (1943). A disclaimer of warranty coverage is consequently ineffective to avoid the implied warranty of merchantability created by Uniform Commercial Code 2–314 unless the disclaimer specifically mentions "merchantability." Uniform Commercial Code 2–136(2). Seiscor's disclaimer did not do so. See *Zicari v. Joseph Harris Co.*, 33 A.D.2d 17, 304 N.Y.S.2d 918, 924 (4th Dept.1969).

The warranty at issue states that "SPECIFICALLY EXCLUDED" are "any consequential damage resulting directly or indirectly from the use of the products." This would appear to embrace, for example, damages caused by a telephone call placed but received by an unintended party. Consequential damages resulting from inability to use or sell the product are not mentioned, but defendants appear to construe the warranty as excluding them despite this.[6]

An interpretation limiting a warranty contrary to the plain meaning of the text,

thus unduly favoring the position of a sophisticated party preparing a standard form document, would be inappropriate. See generally *Rau v. Cavenaugh*, 500 F.Supp. 204 (D.S.C.1980); N.Y.Gen. Obligations Law § 5–702; Practising Law Institute, *Drafting Documents in Plain Language* (1981); see also Rakoff, *Contracts of Adhesion*, 96 Harv. L.Rev. 1173 (1983).

## VIII

Defendants claim accord and satisfaction with respect to a "Product Improvement Agreement" signed by plaintiff Trident Technologies, Inc. and Seiscor, embracing repair or replacement of existing components with improved reliability. The information before the court is insufficient to determine with reliability whether or not that agreement was intended to replace other obligations and whether or not it was breached and hence claims under it or preceding agreements may be pursued.

## IX

Given the rulings made in this memorandum order, the parties may wish to revisit the option of settlement of these cases prior to incurring further legal expense. If direct negotiations are unsuccessful, resort to the mediation services of the court or assistance in developing other means of settlement may be requested.

SO ORDERED.

---

6. Speculative consequential damages cannot be granted for the reasons set forth earlier in this memorandum order.