In re RANDALL'S ISLAND FAMILY
GOLF CENTERS, INC., et al.,
Debtor.

Gary Gelman, Appellant,

v.

Randall's Island Family Golf
Centers, Inc., Appellee.

No. 01 CIV 7981(JSM).

United States District Court,
S.D. New York.

Jan. 15, 2002.

Jonathan L. Flaxner, Jacqueline G. Veit, Golenbock, Eiseman, Assor, Bell & Peskoe, New York City, for appellee.

Mark R. Kook, Hartman & Craven, New York City, for appellant.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge.

This is an appeal of a ruling of the United States Bankruptcy Court for the Southern District of New York (Judge Stuart Bernstein) holding that Gary Gelman, Appellant, had withdrawn an irrevocable bid to purchase property being sold by the Debtor and had, therefore, forfeited his deposit. For the following reasons, the Bankruptcy Court's post-trial opinion denying Gelman's application for the return of his deposit is affirmed.

## BACKGROUND

The Debtor in this action, Randall's Island Family Golf Centers, Inc., prior to filing for Chapter 11 relief on May 4, 2000, owned and/or operated more than 100 golf courses, skating rinks and family entertainment centers nationwide. After filing for bankruptcy, the Debtor sold off various properties and proposed that the remaining properties be auctioned off. The Bankruptcy Court approved the bidding procedures in connection with the auction. Those placing a bid submitted an irrevocable 10% deposit along with their bid. At the conclusion of the auction, the Debtor identified the "Successful Bidder" and a "Back-up Bidder" for each property.

The Appellant, Gary Gelman, bid $1 million for the property at issue in this litigation, and was selected as the back-up bidder. On February 15, 2001, Charles Rich, an attorney for the Debtor, called one of Gelman's attorneys, Joel Frank. Rich advised Frank that the "highest bidder on the Property appeared to be defaulting [and] that the Debtor might therefore be assigning the lease to the Property to Mr.

Gelman." (Rich Aff. ¶ 7.) Rich advised Frank that the Debtor needed Gelman's financial information to conclude the deal. Frank said that he would get the financial information from the client. (Post–Trial Opinion, July 2, 2001 ("July Op."), at 3 (citing Hearing Tr. held June 19, 2001 at 47, 81).) Frank never sent the information and called Rich later that same day to say that Gelman was withdrawing his bid. *Id.* He also sent a fax confirming the message. *Id.* Rich noted on the fax that the bidding rules did not permit Gelman to withdraw his offer and faxed this back to Gelman's attorney. *Id.* at 4. After Gelman attempted to withdraw the bid, the Debtor sold the lease to a third party for $700,000 and refused to return Gelman's deposit. *Id.* at 6.

Gelman moved to compel the Debtor to return the deposit. In a decision dated April 19, 2001, the Bankruptcy Court denied Gelman's motion, finding that Gelman, as a matter of law, improperly repudiated his obligation to keep his irrevocable bid open. The Bankruptcy Court found that it could not decide without a factual inquiry whether Rich adequately notified Gelman that he was the successful bidder, and whether the Debtor could have closed the deal but for Gelman's repudiation. On June 19, 2001, the Bankruptcy Court held a trial to determine these factual issues.

On July 2, 2001, Judge Bernstein issued a post-trial opinion finding that the Debtor had fulfilled his obligation to Gelman and denying Gelman's application for the return of his deposit. Gelman now brings an appeal to this Court claiming that the Bankruptcy Court made a legal error because the Debtor had rejected Gelman's withdrawal and then never gave Gelman notice that his bid was accepted or that a closing was scheduled.

## DISCUSSION

■ The Appellant argues on appeal that the Bankruptcy Court erred in finding an anticipatory breach. Rather than a breach, Appellant contends that the Debtor rejected Gelman's request to withdraw his bid and then never gave notice that Gelman's bid had been accepted. This Court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir.2000). The issue in this case is whether Appellant anticipatorily repudiated the contract with Debtor.

■ Under New York law, an anticipatory breach occurs when a party to a contract repudiates his obligations prior to performance. *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 462–63, 682 N.Y.S.2d 664, 667, 705 N.E.2d 656 (1998); *Am. List Corp. v. U.S. News & World Report*, 75 N.Y.2d 38, 44, 550 N.Y.S.2d 590, 549 N.E.2d 1161 (1989); *DeLorenzo v. Bac Agency, Inc.*, 256 A.D.2d 906, 681 N.Y.S.2d 846, 848 (3rd Dep't 1998).

■ The Bankruptcy Court correctly concluded that Gelman repudiated his obligation. The facts surrounding the repudiation are undisputed. When the Debtor's attorney notified Gelman that he was likely to be the winning bidder and that he needed to submit financial records to complete the deal, Gelman responded that he wished to withdraw his bid. Despite notice from the Debtor that all bids were irrevocable, Gelman never submitted the required financial information. The Bankruptcy Court found that Gelman never made further inquiries into the status of the property and failed to attend a hearing about the disposition of the property even though he was notified about it by Rich. July Op. at 9–10. Gelman's words and deeds about his intention to repudiate the contract were

"unequivocal." *Norcon,* 92 N.Y.2d at 463, 682 N.Y.S.2d at 667, 705 N.E.2d 656; *DeLorenzo,* 681 N.Y.S.2d at 848 (nonrepudiating party is entitled to immediately claim damages for breach when there is "an unqualified and clear refusal to perform with respect to the entire contract").

Appellant makes much of the fact that, upon receiving the fax that Gelman wished to withdraw his bid, the Debtor responded by fax, saying that the offer was irrevocable. Appellant argues that this reply fax indicated that the Debtor did not deem the contract breached. This argument is unpersuasive. Appellant expressed an intention to withdraw the irrevocable bid and then did or said nothing to indicate that he would fulfill his obligation under the contract.

■ Once Gelman anticipatorily breached, the Debtor could either treat the contract as terminated and exercise his remedies, or continue to treat the contract as valid. *ESPN, Inc. v. Office of the Comm'r of Baseball,* 76 F.Supp.2d 383, 388 (S.D.N.Y.1999); *Strasbourger v. Leerburger,* 233 N.Y. 55, 59, 134 N.E. 834 (1922); *Inter–Power of New York, Inc. v. Niagara Mohawk Power Corp.,* 259 A.D.2d 932, 686 N.Y.S.2d 911, 913 (3rd Dep't 1999). In this case, the Debtor chose to treat the contract as breached. Once Gelman stated that he wanted to withdraw the bid and did not provide the required documentation to complete the deal, the Debtor pursued other purchasers.

Two factual issues, which Appellant also contests, were in dispute: 1) did the Debtor adequately notify Gelman that he was the successful bidder; and 2) was the Debtor ready and able to close the deal but for Gelman's repudiation? These issues were reviewed by the Bankruptcy Court at the June 19, 2001, hearing.

Appellant argues that he did not anticipatorily breach the contract because he was never notified that he was the successful bidder. The Bankruptcy Court found that Frank's own testimony indicated that Appellant considered himself the successful bidder. Frank's testimony "implied that he recognized Gelman's obligation to close, was prepared to do so, but didn't because the Debtor never told him that Gelman was the winning bidder or scheduled a closing." July Op. at 5. The Bankruptcy Court found that Frank's testimony that the only thing preventing the deal was Debtor's failure to notify him that Gelman was the successful bidder, was not credible. July Op. at 10. Appellant had no intention of closing and hoped another bidder would be found:

> [Appellant] was counting on a third party, . . . solving his dilemma by purchasing Skydrive at a price equal to or greater than his own bid. He did not protest or demand a closing because Gelman did not want to close.

July Op. at 10.

Ultimately, the Bankruptcy Court found that "regardless of the language used by Frank, Gelman knew that he was obligated under his bid to close, repudiated that obligation, and the Debtor treated the contract as at an end." July Op. at 10–11.

Once Gelman repudiated, the Debtor had no obligation to perform. Under New York law, if the non-breaching party elects to treat the contract as breached, he need only be able to show that he was ready, willing and able to perform. *De Forest Radio Tel. & Tel. Co. v. Triangle Radio Supply Co.*, 243 N.Y. 283, 292–93, 153 N.E. 75 (1926). As required by the rules governing an appeal from a Bankruptcy Court's rulings, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P.

8013. Appellant has offered no compelling reason to find that the Bankruptcy Court was clearly erroneous in finding that the Appellant was on notice that he was the successful bidder and that the Debtor demonstrated willingness and ability to close with Gelman.

For the forgoing reasons, the Bankruptcy Court's decision denying Gelman's return of his deposit is affirmed.

**SO ORDERED.**