MUFG Union Bank, N.A. v Axos Bank (2021 NY Slip Op 04414)





MUFG Union Bank, N.A. v Axos Bank


2021 NY Slip Op 04414


Decided on July 15, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 15, 2021

Before: Renwick, J.P., Kapnick, Singh, Kennedy, JJ. 


Index No. 652474/19 Appeal No. 13774 Case No. 2020-03991 

[*1]MUFG Union Bank, N.A. Formerly Known as Union Bank, N.A., Plaintiff-Respondent,
v
Axos Bank Formerly Known as Bank of Internet USA, et al., Defendants-Appellants.


Anderson Kill, PC, New York (Jeremy E. Deutsch of counsel), for Axos Bank, Axos Fiduciary Services, Axos Nevada, LLC and Seller Sub, LLC, appellants.
Weil, Gotshal & Manges LLP, New York (Zachary D. Tripp of counsel), for Epiq Systems, Inc., appellant.
Pillsbury Winthrop Shaw Pittman LLP, New York (David G. Keyko of counsel), for respondent.



Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered September 28, 2020, which, to the extent appealed from as limited by the briefs, denied defendants Axos Nevada, LLC, Seller Sub, LLC, Axos Fiduciary Services, and Axos Bank's (collectively, Axos) motion for summary judgment dismissing the claim for tortious interference with contractual relations and denied defendant Epiq Systems, Inc.'s (Epiq) motion for summary judgment dismissing the first cause of action for breach of contract, unanimously modified, on the law and the facts, to dismiss the first cause of action for breach of contract as to Epiq only to the extent that it seeks consequential damages caused willfully, and otherwise affirmed, without costs. Plaintiff MUFG Union Bank (Union) and defendant Epiq entered into a Joint Services Agreement (JSA) in 2012 "to jointly promote their products and services to bankruptcy and insolvency professionals." The JSA contemplated customers entering into separate "End-User" agreements with Union and Epiq, providing that Union would deliver deposit and other banking services and Epiq would provide software services to parties deemed to be "Joint Clients." Their relationship was not exclusive, as both parties could independently or jointly market their services and products, and Epiq was entitled to engage other banks to provide deposit services to its clients. Union commenced this action seeking damages for breach of the JSA, alleging that Epiq assigned the JSA to Axos without Union's prior express consent [FN1] and violated the confidentiality provision by sharing confidential information with Axos.[FN2]
The limitation-of-liability provision of the JSA, section 22, caps damages for breach of the JSA, except for certain specific sections of the JSA not including the anti-assignment clause, at $5 million. The cap for damages for a violation of the confidentiality clause is $10 million. The last clause of the provision states that "[n]otwithstanding the foregoing limitations of liability, if any breach by a party is finally found by a court or arbitration panel of competent jurisdiction to have been caused willfully or by the gross negligence of the breaching party, then the non-breaching party shall be entitled to seek, and may be awarded, consequential, special, indirect, punitive and/or treble damages for any such breach in an amount not to exceed $10,000,000."
Union alleges that due to the breaches of the JSA, it has suffered $100 million in lost profits. "Lost profits may be either general or consequential damages, depending on whether the non-breaching party bargained for such profits and they are the direct and immediate fruits of the contract" (Biotronik A.G. v Conor Medsystems Ireland, Ltd. 22 NY3d 799, 806 [2014] [internal quotation marks omitted]). Lost profits qualify as general or direct damages when they "are the natural and probable consequence of the breach" (id. at 805 [internal quotation marks omitted]; see also American [*2]List Corp. v U.S. News & World Report, Inc., 75 NY2d 38, 42-43 [1989]), while consequential damages "do not so directly flow from the breach"(75 NY2d at 43; see also Tractebel Energy Mktg. v AEP Power Mktg., 487 F3d 89, 109 [2d Cir 2007]["Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements."]). While we agree with the motion court that a "fuller record at trial is needed" to determine whether Union's damages qualify as direct or consequential damages, we conclude that the damages must, nonetheless, be capped at $5,ooo,ooo for any breach of section 23 of the JSA, the anti-assignment clause, and at $10,000,000 for any breach of section 13 of the JSA, the confidentiality provision, because Union has not shown that Epiq's breach of the JSA was "caused willfully or by [ ] gross negligence" as contemplated by the last sentence in the limitation-of liability clause.
In the context of this contract, the term "willful" must be understood to be "truly culpable, harmful conduct" (Metropolitan Life Ins. Co. v Noble Lowndes Intl., 84 NY2d 430, 438 [1994]) and not, as Union contends, "merely intentional nonperformance" (id.). As the Court of Appeals noted in Met Life, "[g]enerally in the law of contract damages, as contrasted with damages in tort, whether the breaching party deliberately rather than inadvertently failed to perform contractual obligations should not affect the measure of damages" and "[t]he policy which runs through the fabric of the law of contracts is to bind a party by what he agrees to do whether or not he intends to do what he agrees" (id. at 435 [internal quotation marks omitted]). The last clause in the limitation-of-liability provision refers to special damages in the context of breaches caused willfully or by gross negligence. Thus,"[u]nder the interpretation tool of ejusdem generis applicable to contracts as well as statutes, the phrase 'willful acts' [or 'caused willfully' as used in the JSA] should be interpreted here as referring to conduct similar in nature to the . . . 'gross negligence' with which it was joined . . ." (id. at 438). On this record, there is no evidence that Epiq breached the JSA intending to willfully inflict harm on Union; rather, the proof is that Epiq sold its bankruptcy software business to Axos in order to advance its own economic self-interest. Accordingly, applying the facts of this case to the limitation-of-liability provision, Union may only recover damages under the liability caps for nonwillful breaches of the JSA.
The court correctly denied Axos's motion for summary judgment dismissing the tortious interference claim. "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of [*3]the contract without justification, actual breach of the contract, and damages resulting therefrom" (Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]). Axos asserts that the JSA is terminable at will and thus cannot be the basis for a tortious interference with contract claim (see Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183, 190-192 [1980]). Axos additionally suggests that while New York law also recognizes the tort of interference with prospective contracts, Union could not assert that cause of action because Axos did not interfere by wrongful means, which is a required element of that claim (see generally NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614, 624 [1996]; see also Guard-Life, 50 NY2d at 191).
Initially, we note that Union is not alleging that Axos interfered with its prospective contract rights. Instead, Union alleges that Axos procured breaches by Epiq of contractual provisions, unrelated to termination, that protected Epiq's rights and interests during the existence of the contract. Thus, Union can make out a claim for tortious interference with contract by showing an existing, enforceable contract and deliberate interference by Axos resulting in breaches of the JSA (see NBT, 87 NY2d at 621), and we reject Axos's argument that such a claim is barred under all circumstances when a contract is terminable at will. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: July 15, 2021



Footnotes

Footnote 1: Prior to the orders on appeal here, the motion court granted Union partial summary judgment on the first cause of action, finding that Epiq had breached the anti-assignment clause by assigning the JSA to Axos without Union's consent.

Footnote 2: The motion court noted that "Epiq [did] not vigorously pursue summary judgment relating to the confidentiality clause" and denied its motion to dismiss the second cause of action alleging that Epiq breached the confidentiality provisions in the JSA. Similarly, on appeal, Epiq barely addresses the second cause of action in its briefs, and thus this Court has not addressed the second cause of action.