[886 NE2d 127, 856 NYS2d 505]

Bi-Economy Market, Inc., Appellant, v Harleysville Insurance Company of New York et al., Respondents.

Argued January 9, 2008; decided February 19, 2008

## POINTS OF COUNSEL

*Lipsitz & Ponterio, LLC,* Buffalo (*Kathleen A. Burr* and *John Ned Lipsitz* of counsel), for appellant. I. A consequential "loss" exclusion in an insurance policy does not preclude recovery of consequential "damages" caused by an insurance company's breach. (*Korona v State Wide Ins. Co.,* 122 AD2d 120; *O'Dell v New York Prop. Ins. Underwriting Assn.,* 145 AD2d 791; *Davis v Mutual of Omaha Ins. Co.,* 167 AD2d 714; *Manolis v International Life Ins. Co. of Buffalo,* 83 AD2d 784; *Metropolitan Life Ins. Co. v Noble Lowndes Intl.,* 84 NY2d 430; *United States Trust Co. of N.Y. v O'Brien,* 143 NY 284; *Kenford Co. v County of Erie,* 73 NY2d 312; *Ashland Mgt. v Janien,* 82 NY2d 395; *Lava Trading Inc. v Hartford Fire Ins. Co.,* 326 F Supp 2d 434; *Panasia Estates, Inc. v Hudson Ins. Co.,* 39 AD3d 343.) II. New York law recognizes Bi-Economy Market, Inc.'s claim for consequential damages for the death of its business as a remedy for the Harleysville defendants' breach. (*Kenford Co. v County of Erie,* 73 NY2d 312; *Sabbeth Indus. v Pennsylvania Lumbermens Mut. Ins. Co.,* 238 AD2d 767; *Hold Bros., Inc. v Hartford Cas. Ins. Co.,* 357 F Supp 2d 651; *J.R. Adirondack Enters. v Hartford Cas. Ins. Co.,* 292 AD2d 771; *Royal Coll. Shop, Inc. v Northern Ins. Co. of N.Y.,* 895 F2d 670; *Kosierowski v Madison Life Ins. Co.,* 31 AD2d 930, 25 NY2d 737; *Great Canal Realty Corp. v Seneca Ins. Co., Inc.,* 13 AD3d 227, 5 NY3d 742; *Rocanova v Equitable Life Assur. Socy. of U.S.,* 83 NY2d 603; *New York Univ. v Continental Ins. Co.,* 87 NY2d 308; *American List Corp. v U.S. News & World Report,* 75 NY2d 38.)

*Chelus, Herdzik, Speyer & Monte, P.C.,* Buffalo (*Michael F. Chelus* and *Christopher R. Poole* of counsel), for respondents. I. In a breach of contract action, a nonbreaching party may only recover damages that were within the contemplation of the par-

ties at the time of contracting. (*Kenford Co. v County of Erie,* 73 NY2d 312; *Kenford Co. v County of Erie,* 67 NY2d 257; *Globe Refining Co. v Landa Cotton Oil Co.,* 190 US 540; *Martin v Metropolitan Prop. & Cas. Ins. Co.,* 238 AD2d 389; *Crawford Furniture Mfg. Corp. v Pennsylvania Lumbermens Mut. Ins. Co.,* 244 AD2d 881; *Rocanova v Equitable Life Assur. Socy. of U.S.,* 83 NY2d 603; *New York Univ. v Continental Ins. Co.,* 87 NY2d 308; *LTS Contrs. v Hartford Ins. Co.,* 99 AD2d 644; *Brody Truck Rental v Country Wide Ins. Co.,* 277 AD2d 125; *J.R. Adirondack Enters. v Hartford Cas. Ins. Co.,* 292 AD2d 771.) II. Appellant improperly relies upon case law outside of the Fourth Department that is unchallenged, speculative or inapplicable. (*Acquista v New York Life Ins. Co.,* 285 AD2d 73; *Panasia Estates, Inc. v Hudson Ins. Co.,* 39 AD3d 343; *Sabbeth Indus. v Pennsylvania Lumbermens Mut. Ins. Co.,* 238 AD2d 767; *USAlliance Fed. Credit Union v CUMIS Ins. Socy., Inc.,* 346 F Supp 2d 468; *Crawford Furniture Mfg. Corp. v Pennsylvania Lumbermens Mut. Ins. Co.,* 244 AD2d 881; *J.R. Adirondack Enters. v Hartford Cas. Ins. Co.,* 292 AD2d 771; *Lava Trading Inc. v Hartford Fire Ins. Co.,* 326 F Supp 2d 434; *Hold Bros., Inc. v Hartford Cas. Ins. Co.,* 357 F Supp 2d 651.) III. Bi-Economy Market, Inc. improperly seeks expansion of unrelated issues pertaining to rights and remedies of insured. IV. The New York Public Adjusters Association represents the interests of insureds and attempts to influence the Court of Appeals as such. (*Acquista v New York Life Ins. Co.,* 285 AD2d 73; *Batas v Prudential Ins. Co. of Am.,* 281 AD2d 260.)

*Wilkofsky, Friedman, Karel & Cummins,* New York City (*Mark L. Friedman* of counsel), for New York Public Adjusters Association, amicus curiae. I. The damages suffered by Bi-Economy Market, Inc. constitute general damages which are the natural and probable consequences of the Harleysville defendants' breach of contract. (*Archer Daniels Midland Co. v Hartford Fire Ins. Co.,* 243 F3d 369; *American List Corp. v U.S. News & World Report,* 75 NY2d 38; *Kenford Co. v County of Erie,* 73 NY2d 312; *Massi's Greenhouses v Farm Family Mut. Ins. Co.,* 233 AD2d 844.) II. Consequential damages have always been a permitted remedy in a breach of contract cause of action. (*Acquista v New York Life Ins. Co.,* 285 AD2d 73; *Sabbeth Indus. v Pennsylvania Lumbermens Mut. Ins. Co.,* 238 AD2d 767; *Mortimer v Otto,* 206 NY 89; *Globe Refining Co. v Landa Cotton Oil Co.,* 190 US 540; *Kenford Co. v County of Erie,* 67 NY2d 257; *Fleming v Allstate Ins. Co.,* 106 AD2d 426; *Korona v State Wide Ins. Co.,* 122 AD2d 120; *Batas v Prudential Ins. Co. of Am.,* 281 AD2d 260; *New*

*York Univ. v Continental Ins. Co.,* 87 NY2d 308; *Rocanova v Equitable Life Assur. Socy. of U.S.,* 83 NY2d 603.) III. "Consequential loss" is not synonymous with "consequential damages."

*Anderson Kill & Olick, P.C.,* New York City (*Eugene R. Anderson* and *Richard P. Lewis* of counsel), and *Amy Bach,* Mill Valley, California, for United Policyholders, amicus curiae. I. Whether the insurance companies acted in bad faith is irrelevant to Bi-Economy Market, Inc.'s recovery of consequential damages. (*Sabbeth Indus. v Pennsylvania Lumbermens Mut. Ins. Co.,* 238 AD2d 767; *Kenford Co. v County of Erie,* 73 NY2d 312; *Hold Bros., Inc. v Hartford Cas. Ins. Co.,* 357 F Supp 2d 651; *Lava Trading Inc. v Hartford Fire Ins. Co.,* 326 F Supp 2d 434; *Carney v Memorial Hosp. & Nursing Home of Greene County,* 101 AD2d 990; *New York Univ. v Continental Ins. Co.,* 87 NY2d 308.) II. Exclusion of consequential loss under an insurance policy does not bar recovery of consequential damages. (*Lava Trading Inc. v Hartford Fire Ins. Co.,* 326 F Supp 2d 434; *Panasia Estates, Inc. v Hudson Ins. Co.,* 39 AD3d 343; *Hold Bros., Inc. v Hartford Cas. Ins. Co.,* 357 F Supp 2d 651; *Royal Coll. Shop, Inc. v Northern Ins. Co. of N.Y.,* 895 F2d 670.)

*Rivkin Radler LLP,* Uniondale (*Evan H. Krinick, Michael A. Troisi* and *Michael P. Versichelli* of counsel), for New York Insurance Association and others, amici curiae. Public policy militates against exposing carriers to liability beyond the bargained-for policy limits. (*Lava Trading Inc. v Hartford Fire Ins. Co.,* 326 F Supp 2d 434; *DiBlasi v Aetna Life & Cas. Ins. Co.,* 147 AD2d 93; *Pavia v State Farm Mut. Auto. Ins. Co.,* 82 NY2d 445; *St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.,* 43 NY2d 977; *Asahi Glass Co., Ltd. v Pentech Pharms., Inc.,* 289 F Supp 2d 986.)

### OPINION OF THE COURT

PIGOTT, J.

In this action brought by an insured against an insurer for breach of a commercial property insurance contract, the principal issue presented is whether the insured can assert a claim for consequential damages. Under the circumstances of this case, we hold that it can.[*]

### I.

Bi-Economy Market, a family-owned wholesale and retail meat market located in Rochester, New York, suffered a major

---

[*] This being an appeal from the grant of partial summary judgment to the insurer, we view the facts in the light most favorable to the insured.

fire in October 2002, resulting in the complete loss of food inventory and heavy structural damage to the building and business-related equipment. At the time of the fire, Bi-Economy was insured by defendant Harleysville Insurance Company under a "Deluxe Business Owners" policy that provided replacement cost coverage on the building as well as business property or "contents" loss coverage.

The policy also provided coverage for lost business income, what is commonly referred to as "business interruption insurance," for up to one year from the date of the fire. Specifically, the contract stated that Harleysville would "pay for the actual loss of Business Income . . . sustain[ed] due to . . . the necessary suspension of [Bi-Economy's] 'operations' during the 'period of restoration.' " Business income is defined as the "(1) Net Income (Net Profit *or Loss* before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll." "Period of restoration" is defined as the period of time that "[b]egins with the date of direct physical loss or damage" and "[e]nds on the date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality."

Following the fire, Bi-Economy submitted a claim to Harleysville pursuant to the terms of the contract. Harleysville disputed Bi-Economy's claim for actual damages, and advanced only the sum of $163,161.92. More than a year later, following submission of their dispute to alternative dispute resolution, Bi-Economy was awarded the additional sum of $244,019.88. During all this time, Harleysville offered to pay only seven months of Bi-Economy's claim for lost business income, despite the fact that the policy provided for a full 12 months. Bi-Economy never resumed business operations.

In October 2004, Bi-Economy commenced this action against Harleysville, asserting causes of action for bad faith claims handling, tortious interference with business relations and breach of contract, seeking consequential damages for "the complete demise of its business operation in an amount to be proved at trial." Bi-Economy alleged that Harleysville improperly delayed payment for its building and contents damage and failed to timely pay the full amount of its lost business income claim. Bi-Economy further alleged that, as a result of Harleysville's breach of contract, its business collapsed, and that liability for such consequential damages was reasonably foreseeable and contemplated by the parties at the time of contracting.

Harleysville answered, and subsequently moved for leave to amend its answer to raise the defense that the contract excluded consequential damages and for partial summary judgment dismissing Bi-Economy's breach of contract cause of action. In support of its motion, Harleysville cited several contractual provisions excluding coverage for "consequential loss."

Supreme Court granted the motion and the Appellate Division affirmed, holding that "the insurance policy expressly exclude[d] coverage for consequential losses, and thus it cannot be said that [consequential] damages were contemplated by the parties when the contract was formed" (37 AD3d 1184, 1185 [2007] [internal quotation marks and citations omitted]). The Appellate Division granted Bi-Economy leave to appeal and certified the following question: "Was the order of this Court, entered February 2, 2007, properly made?" We conclude that it was not.

## II.

Bi-Economy contends that the courts below erred in dismissing its breach of contract claim seeking consequential damages for the collapse of its business resulting from Harleysville's failure to fulfill its obligations under the contract of insurance. We agree and therefore reverse the order of the Appellate Division and reinstate that cause of action.

It is well settled that in breach of contract actions "the non-breaching party may recover general damages which are the natural and probable consequence of the breach" (*Kenford Co. v County of Erie*, 73 NY2d 312, 319 [1989]). Special, or consequential damages, which "do not so directly flow from the breach," are also recoverable in limited circumstances (*American List Corp. v U.S. News & World Report*, 75 NY2d 38, 43 [1989]). In *Kenford*, we stated that

> "[i]n order to impose on the defaulting party a further liability than for damages [which] naturally and directly [flow from the breach], i.e., in the ordinary course of things, arising from a breach of contract, such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting" (73 NY2d at 319 [internal quotation marks and citations omitted]).

We later explained that "[t]he party breaching the contract is li-

able for those risks foreseen or which should have been foreseen at the time the contract was made" (*Ashland Mgt. v Janien*, 82 NY2d 395, 403 [1993]). It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, "[i]t is only necessary that loss from a breach is foreseeable and probable" (*id.*, citing Restatement [Second] of Contracts § 351; 3 Farnsworth, Contracts § 12.14 [2d ed 1990]).

To determine whether consequential damages were reasonably contemplated by the parties, courts must look to "the nature, purpose and particular circumstances of the contract known by the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made' " (*Kenford*, 73 NY2d at 319, quoting *Globe Refining Co. v Landa Cotton Oil Co.*, 190 US 540, 544 [1903]). Of course, proof of consequential damages cannot be speculative or conjectural (*see Ashland Mgt.*, 82 NY2d at 403 [damages for the loss of future profits must be proven with reasonable certainty and "be capable of measurement based upon known reliable factors without undue speculation"]; *see also Kenford Co. v County of Erie*, 67 NY2d 257, 261 [1986]).

The dissent seeks to distinguish this case from the *Kenford* line of reasoning by grouping it with that separate class of contract actions involving pure "agreements to pay"—contracts for money only—where the only recoverable damage for breach is interest. This distinction is without basis. With agreements to pay money—for example, an agreement to pay sales commissions or a contract to pay a lender $12 tomorrow for $10 given today, the sole purpose of the contract is to pay for something given in exchange. In such cases, what the payee plans to do with the money is external and irrelevant to the contract itself. In the present case, however, the purpose of the agreement— what the insured planned to do with its payment—was at the very core of the contract itself.

The dissent also blurs the significant distinction between consequential and punitive damages. The two types of damages serve different purposes and are evidenced by different facts. Consequential damages, designed to compensate a party for reasonably foreseeable damages, "must be proximately caused by the breach" and must be proven by the party seeking them (24 Lord, Williston on Contracts § 64:12, at 125 [4th ed]). Punitive damages, by contrast, "are not measured by the pecuniary loss

or injury of the plaintiff as a compensation" but are "assessed by way of punishment to the wrongdoer and example to others" (11 Perillo, Corbin on Contracts § 59.2, at 550 [rev ed]). Unlike consequential damages, which are quantifiable, "[t]here is no rigid formula by which the amount of punitive damages is fixed, although they should bear some reasonable relation to the harm done and the flagrancy of the conduct causing it" (*I. H. P. Corp. v 210 Cent. Park S. Corp.*, 16 AD2d 461, 467 [1st Dept 1962], *affd* 12 NY2d 329 [1963]).

As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims" (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995]). An insured may also bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe (*see e.g. Beck v Farmers Ins. Exch.*, 701 P2d 795, 802 [Utah 1985] ["(I)t is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries"]; *Best Place, Inc. v Penn Am. Ins. Co.*, 82 Haw 120, 128, 920 P2d 334, 342 [1996], quoting *Noble v National Am. Life Ins. Co.*, 128 Ariz 188, 189, 624 P2d 866, 867 [1981] ["An insurance policy is not obtained for commercial advantage; it is obtained as protection against calamity"]; *Andrew Jackson Life Ins. Co. v Williams*, 566 So 2d 1172, 1179 n 9 [Miss 1990] ["(A)n insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim"]; *Ainsworth v Combined Ins. Co. of Am.*, 104 Nev 587, 592, 763 P2d 673, 676 [1988] ["A consumer buys insurance for security, protection, and peace of mind"]).

### III.

The purpose served by business interruption coverage cannot be clearer—to ensure that Bi-Economy had the financial support necessary to sustain its business operation in the event disaster occurred (*see Howard Stores Corp. v Foremost Ins. Co.*, 82 AD2d 398, 400 [1st Dept 1981] ["The purpose of business interruption insurance is to indemnify the insured against losses arising from inability to continue normal business operation and functions due to the damage sustained as a result of the hazard insured against"], *affd* 56 NY2d 991 [1982]; 3-36 Bend-

er's New York Insurance Law § 36.06). Certainly, many business policyholders, such as Bi-Economy, lack the resources to continue business operations without insurance proceeds. Accordingly, limiting an insured's damages to the amount of the policy, i.e., money which should have been paid by the insurer in the first place, plus interest, does not place the insured in the position it would have been in had the contract been performed (*see generally Brushton-Moira Cent. School Dist. v Thomas Assoc.*, 91 NY2d 256, 261 [1998] ["Damages are intended to return the parties to the point at which the breach arose and to place the nonbreaching party in as good a position as it would have been had the contract been performed"]; *Goodstein Constr. Corp. v City of New York*, 80 NY2d 366, 373 [1992], citing Restatement [Second] of Contracts § 347, Comment *a*; § 344 ["Contract damages are ordinarily intended to give the injured party the benefit of the bargain by awarding a sum of money that will, to the extent possible, put that party in as good a position as it would have been in had the contract been performed"]).

Thus, the very purpose of business interruption coverage would have made Harleysville aware that if it breached its obligations under the contract to investigate in good faith and pay covered claims it would have to respond in damages to Bi-Economy for the loss of its business as a result of the breach (*see Sabbeth Indus. v Pennsylvania Lumbermens Mut. Ins. Co.*, 238 AD2d 767, 769 [3d Dept 1997]).

Furthermore, contrary to the dissent's view, the purpose of the contract was not just to receive money, but to receive it promptly so that in the aftermath of a calamitous event, as Bi-Economy experienced here, the business could avoid collapse and get back on its feet as soon as possible. Thus, this insurance contract included an additional performance-based component: the insurer agreed to evaluate a claim, and to do so honestly, adequately, and—most importantly—promptly. The insurer certainly knew that failure to perform would (a) undercut the very purpose of the agreement and (b) cause additional damages that the policy was purchased to protect against in the first place. Here, the claim is that Harleysville failed to promptly adjust and pay the loss, resulting in the collapse of the business. When an insured in such a situation suffers additional damages as a result of an insurer's excessive delay or improper denial, the insurance company should stand liable for these damages. This is not to punish the insurer, but to give the insured its bargained-for benefit.

Nor do we read the contractual exclusions for certain consequential "losses" as demonstrating that the parties contemplated, and rejected, the recoverability of consequential "damages" in the event of a contract breach. The consequential "losses" clearly refer to delay caused by third-party actors or by the "[s]uspension, lapse or cancellation of any license, lease or contract." Consequential "damages," on the other hand, are in addition to the losses caused by a calamitous event (i.e., fire or rain), and include those additional damages caused by a carrier's injurious conduct—in this case, the insurer's failure to timely investigate, adjust and pay the claim.

Therefore, in light of the nature and purpose of the insurance contract at issue, as well as Bi-Economy's allegations that Harleysville breached its duty to act in good faith, we hold that Bi-Economy's claim for consequential damages including the demise of its business, was reasonably foreseeable and contemplated by the parties, and thus cannot be dismissed on summary judgment.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, defendants' motion for leave to amend their answer to raise the defense of contractual exclusion for consequential damages and partial summary judgment dismissing the plaintiff's second cause of action denied, and the certified question answered in the negative.

Smith, J. (dissenting in this case and in *Panasia Estates, Inc. v Hudson Ins. Co.* [10 NY3d 200 (2008)]). In *Rocanova v Equitable Life Assur. Socy. of U.S.* (83 NY2d 603 [1994]) and *New York Univ. v Continental Ins. Co.* (87 NY2d 308 [1995] [*NYU*]), we rejected the argument that a bad faith failure by an insurer to pay a claim could, without more, justify a punitive damages award. We held that punitive damages are not available for breach of an insurance contract unless the plaintiff shows both "egregious tortious conduct" directed at the insured claimant and "a pattern of similar conduct directed at the public generally" (*Rocanova*, 83 NY2d at 613; see *NYU*, 87 NY2d at 316). Today, the majority abandons this rule, without discussing it and without acknowledging that it has done so. The majority achieves this simply by changing labels: Punitive damages are now called "consequential" damages, and a bad faith failure to pay a claim is called a breach of the "covenant of good faith and fair dealing."

I think that *Rocanova* and *NYU* were correctly decided, and

that the majority makes a mistake in largely nullifying their holdings.

Underlying our refusal in *Rocanova* and *NYU* to open the door to awards of punitive damages was a recognition of the serious harm such awards can do. Punitive damages will sometimes serve to deter insurer wrongdoing and thus protect insureds from injustice, but they will do so at too great a cost. Insurers will fear that juries will view even legitimate claim denials unsympathetically, and that insurers will thus be exposed to damages without any predictable limit. This fear will inevitably lead insurers to increase their premiums—and so will inflict a burden on every New Yorker who buys insurance.

This policy judgment was implicit in *Rocanova* and *NYU*. Not everyone agreed with it. The Appellate Division majority in *Acquista v New York Life Ins. Co.* (285 AD2d 73, 78 [1st Dept 2001]) hardly concealed its disagreement: "It is correct that, to date, this State has maintained the traditional view . . . [citing *Rocanova* and *NYU*]. Yet, for some time, courts and commentators around the country have increasingly acknowledged that a fundamental injustice may result . . . ." The *Acquista* court found a way to avoid what it thought an injustice: award "consequential," not punitive damages. *Acquista* adopted the rule of some sister-state decisions, notably *Beck v Farmers Ins. Exch.* (701 P2d 795 [Utah 1985]), that an insurer that denies a claim in bad faith becomes liable for consequential damages beyond the policy limits (285 AD2d at 80-81). With less frankness than the *Acquista* court—indeed, without even citing *Rocanova* or discussing *Acquista*—the majority here reaches the same result.

The "consequential" damages authorized by the majority, though remedial in form, are obviously punitive in fact. They are not triggered, as true consequential damages are, simply by a breach of contract, but only by a breach committed in bad faith. The majority never explains why this should be true, but the explanation is self-evident: the purpose of the damages the majority authorizes can only be to punish wrongdoers and deter future wrongdoing. They have nothing to do with consequential damages, or with the covenant of good faith and fair dealing, as those terms are ordinarily understood.

The whole idea of "consequential damages" is out of place in a suit against an insurer that has failed to pay a claim—or, indeed, in any case where the obligation breached is merely one to pay money. Consequential damages are a means of measuring

the harm done when a party fails in some nonmonetary performance—say, the transportation of a broken mill shaft (*Hadley v Baxendale*, 9 Exch 341 [1854]) or the construction of a football stadium (*Kenford Co. v County of Erie*, 73 NY2d 312 [1989]). In such cases, where there is no agreement on what money will be paid in the event of a breach, a court must try to decide what damages the parties contemplated—what damages they would have agreed to had they considered the question when the contract was signed (*Kenford*, 73 NY2d at 320). But in insurance contracts or other contracts for the payment of money, the parties have already told us what damages they contemplated; in the case of insurance, it is payment equal to the losses covered by the policy, up to the policy limits. There is no occasion for a *Kenford* analysis.

Nor could such an analysis, done in the way *Kenford* requires, support the results the majority reaches in these two cases. Under *Kenford*, the premise of consequential damages awards is that they effectuate the parties' presumed intentions at the time of contracting: *"the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject"* (*Kenford*, 73 NY2d at 320). Can anyone seriously believe that the parties in these cases would, if they had "considered the subject," have contracted for the results reached here? Imagine the dialogue. Applicant for insurance: "Suppose you refuse, in bad faith, to pay a claim. Will you agree to be liable for the consequences, including lost business, without regard to the policy limits?" Insurance company: "Oh, sure. Sorry, we forgot to put that in the policy."

The majority also departs from the established understanding of the "covenant of good faith and fair dealing"—thus obscuring the fact that the predicate for "consequential" damages here is exactly the same conduct, bad faith failure to pay claims, that we refused to make a predicate for punitive damages in *Rocanova* and *NYU*. Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain (*e.g. 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144 [2002]). Here, plaintiffs allege that defendants breached, in bad faith, the express terms of the policies, by refusing to pay for the losses the policies covered. There is no need for resort to the implied covenant of good faith, and this is the first time, as far as I

know, that we have relied on that implied covenant to condemn the bad faith breach of an express promise.

These two conceptual errors—the misuse of the terms "consequential damages" and "covenant of good faith"—are not the only ones in the majority opinions. The *Bi-Economy* opinion seems fundamentally to misunderstand the purpose of business interruption insurance—which is to compensate the insured for a business interruption that has already occurred, not to prevent one from occurring (*see* majority op at 194-195). If the insured's business is never interrupted, there can be no claim under a business interruption policy. This error seems unimportant, however, for the majority's discussion of business interruption insurance is apparently extraneous to its holding. The *Panasia* case involves no business interruption coverage— yet the majority upholds the legal sufficiency of Panasia's claim for consequential damages on the basis of a simple citation to *Bi-Economy* (*Panasia Estates, Inc. v Hudson Ins. Co.*, 10 NY3d 200, 203 [2008]).

The majority's bad policy choice is more important than the flaws in its reasoning. This attempt to punish unscrupulous insurers will undoubtedly lead to the punishment of many honest ones. Under today's opinions, juries will decide whether claims should have been paid more promptly, or in larger amounts; whether an insurer who failed to pay a claim did so to put pressure on the insured, or from legitimate motives, or from simple inefficiency; and whether, and to what extent, the insurer's slowness and stinginess had consequences harmful to the insured. All these very difficult, often nearly unanswerable, questions will be put to jurors who will usually know little of the realities of either the insured's or the insurer's business. The jurors will no doubt do their best, but it is not hard to predict where their sympathies will lie.

The result of the uncertainty and error that the majority's opinions will generate can only be an increase in insurance premiums. That is the real "consequential damage" flowing from today's holdings.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and JONES concur with Judge PIGOTT; Judge SMITH dissents in a separate opinion in which Judge READ concurs.

Order, insofar as appealed from, reversed, etc.