*480 OPINION OF THE COURT
Gerald E. Loehr, J.
On January 31, 2007, plaintiffs’ home in Pelham, New York (the dwelling) was substantially damaged by fire. At that time, plaintiffs were insured by defendant under a deluxe homeowner’s policy (the policy). Due to the damage caused by the fire, the plaintiffs could no longer reside in the dwelling and rented another residence. They also apparently put some of their possessions, presumably rescued from the dwelling, into rented storage.
After being notified of the fire and having an adjuster inspect the dwelling, in March 2007 defendant offered to settle the loss for $265,000. Plaintiffs rejected this offer. Due to damage to the roof of the dwelling and the consequent intrusion of rain, mold became an additional concern. In March 2007, plaintiffs hired an environmental company to assess the mold problem. Based on the fire damage and mold, it was determined that the entire dwelling should be gutted. Based thereon, in June 2007, defendant revised its estimate and offered plaintiffs $575,000 as a final settlement. Plaintiffs rejected this settlement.
Plaintiffs then demanded that the amount of the loss be determined by appraisal pursuant to section I, paragraph 7 of the policy. Plaintiffs retained J-Con, Inc., which estimated the cost to repair the dwelling to be $1,069,849. Defendant retained Prism General Services, which estimated the cost to repair to be $750,320. In December 2007, the umpire, appointed pursuant to paragraph 7 of the policy, determined the cost to repair the dwelling to be $832,982. In the spring of 2008, defendant agreed to pay such amount and the dwelling was reconstructed. During the reconstruction, plaintiffs’ driveway and landscaping were damaged. Defendant refused to reimburse plaintiffs therefor. Additionally, due to the delay in the settlement process and consequent delay in reconstruction, plaintiffs were forced to remain out of the dwelling for 18 months. Under the policy, plaintiffs were entitled to additional living expenses (ALE)[1] for a maximum of 12 months which defendant refused to extend.
On June 30, 2009, plaintiffs commenced this action. The complaint sets forth four causes of action. The first and fourth causes of action seek reimbursement of expenses plaintiffs as *481 sert are covered under the policy and the second and third causes of action seek consequential damages based on defendant’s bad faith delay in settling the claim.
Defendant moves for summary judgment dismissing the complaint. The first cause of action seeks reimbursement for the expense to remove debris and for damage to plaintiffs’ driveway and landscaping during the reconstruction. While conceding that debris removal and damage to landscaping are covered under the policy,[2] defendant asserts that damage to the driveway is not. The policy provides: “Property We Cover Under Coverage A: 1. Your dwelling including attached structures.” While “Dwelling” is defined in the policy, “structure” is not. The court takes judicial notice that the construction of a driveway in Pelham requires a building permit. Construing the ambiguity in the policy against defendant, the court finds that the driveway is an attached structure under the policy. Accordingly, upon searching the record (Leiner v F. Schumacher & Co., 78 AD3d 1131 [2d Dept 2010]), plaintiffs are granted summary judgment as to liability on the first cause of action with the damages for reimbursement of debris removal expenses and landscaping damage as limited by the policy.
The fourth cause of action seeks reimbursement for rental charges the plaintiffs incurred to store their possessions during the first 12 months after the fire. As there is a question of fact as to whether this was a reasonable expense necessary for the plaintiffs to maintain their normal standard of living (see n 1, supra), the motion for summary judgment dismissing this cause of action is denied.
The second cause of action seeks damages equal to their ALE in excess of 12 months, and the third cause of action seeks recovery of the expense of the mold inspection and expenses of the appraisal. Defendant moves for summary judgment dismissing such claims based on the language of the policy which limits
*482 ALE claims to 12 months and provides that each party “shall pay the appraiser it chooses, and equally bear the expenses for the umpire and all other appraisal expenses.” Plaintiffs do not seek these amounts under the policy but as consequential damages for defendant’s breach of its covenant of good faith and fair dealing.
As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims (Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 193 [2008]). While New York does not recognize an independent tort cause of action for an insurer’s failure to perform its contractual obligations under an insurance policy (New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995]; Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603 [1994]), where an insurer breaches its duty to investigate, bargain and settle claims in good faith, consequential damages for breach of contract may be recovered not limited by the amount specified in the insurance policy (Acquista v New York Life Ins. Co., 285 AD2d 73, 77 [1st Dept 2001]; see Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 192-193 [2008]).
Here, the plaintiffs have submitted evidence in admissible form that defendant offered plaintiffs $265,000 and then $575,000 on a claim ultimately determined to be, and paid, in the amount of $832,982, and that plaintiffs suffered damage due to the delay in reconstruction of their dwelling due to defendant’s bad faith delay in settling the claim. This makes out a prima facie claim for breach of the covenant of good faith (see Acquista at 77). The duty therefore shifted to defendant to submit evidence that raises a question of fact requiring a trial. Defendant has failed to do so. Accordingly, plaintiffs are granted summary judgment as to liability on the second and third causes of action.

. “We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover makes your residence uninhabitable.”

.
“We will pay reasonable expenses you incur to remove debris of covered property damaged by a loss we cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property [$809,675], we will pay up to an additional 5% of that limit for debris removal.
“We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under Coverage A — Dwelling Protection for loss to trees, shrubs plants and lawns at the address of the residence premises. We will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris.”