CONNER, J.,
dissenting.
I respectfully dissent. Applying New York law, I conclude the trial court reached the right decision in interpreting the asset purchase agreement and denying Progress Energy’s motions for summary judgment and directed verdict as to that agreement.
New York law recognizes “the basic principle of recovery for a breach of contract is that the injured party should be placed in the same position it would have been in had the contract been performed.” ATI Telecom v. Trescom Int’l, Inc., 1996 WL 455010 at 2 (S.D.N.Y. Aug.12, 1996); see also U.S. W. Fin. Servs., Inc. v. Marine Midland Realty Credit Corp., 810 F.Supp. 1393, 1397 (S.D.N.Y.1993) (quoting Teachers Ins. Annuity Assn. v. Butler, 626 F.Supp. 1229, 1236 (S.D.N.Y.1986)). It also identifies two broad categories of damages:' “general” and “special.” “General damages are those which are the natural and probable consequence of the breach, while special damages are extraordinary in that they do not so directly flow from the breach.” Am. List Corp. v. U.S. News & World Report, 75 N.Y.2d 38, 42-43, 550 N.Y.S.2d 590, 549 N.E.2d 1161 (1989) (internal citation omitted). The term “consequential damages” is synonymous with special damages. In re CCT Commc’ns, Inc., 464 B.R. 97, 117 (Bankr.S.D.N.Y.2011).
The critical language for my analysis is: “In no event shall any party be liable to any other party under any provision of this Agreement for any lost profits, lost sales, business interruption, lost business opportunities, lost Tax Credits, lost Tonnage Fees or consequential, incidental, punitive or exemplary damages incurred or suffered by a party-” (emphasis added). Progress Energy argues the itemized list of “lost profits,” “lost sales,” “lost business opportunities.” “lost tax credits,” and “lost tonnage fees” are examples of general damages defined by New York caselaw. The majority agrees the listing is an unambiguous general limitation-on-damages provision. However, I fail to see how the listing can be an unambiguous general limitation-on-damages provision when, under New York law, “lost profits,” “lost sales,” “lost business opportunities,” “lost tax credits,” and “lost tonnage fees” can be either general or special damage.
*772 In contrast, New York caselaw treats “business interruption” damages as special or consequential damages, not general damages. World-Link, Inc. v. Citizens Telecomms. Co., 2000 WL 1877065 (S.D.N.Y. Dec.26, 2000); see also Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y., 10 N.Y.3d 187, 856 N.Y.S.2d 505, 886 N.E.2d 127 (2008) (business interruption insurance coverage was deemed to permit award of consequential damages). Therefore, the itemized list of damages preceding the “or” with bold emphasis above cannot be categorized as general damages because it includes a type of damage which is considered as only special damages within it. I agree with the trial court that by including “business interruption” within the itemization, the list contemplates special damages, not general damages. Had the parties intended to exclude general damages in total, they need only have said so. By failing to do so, the parties are stuck with those damages itemized within the damage limitation provision. Under New York law, “[cjourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.” Vermont Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 775 N.Y.S.2d 765, 807 N.E.2d 876 (2004) (citations and quotations omitted).
In reaching an opinion as to the amount of the damages suffered for the breach of the asset purchase agreement, neither of U.S. Global’s damage experts relied on any calculations of “lost profits,” “lost sales,” “business interruption,” “lost business opportunities,” “lost tax credits,” or “lost tonnage fees.” As to the calculation of damages for breach of the commission and services agreements, it is true that U.S. Global’s expert conducted a calculation using “monetized tons” and “monetization rate per ton,” but I do not equate calculations using those terms with “lost profits,” “lost sales,” “lost business opportunities,” “lost tax credits,” or “lost tonnage fees.”
I note that all the parties to the agreements were sophisticated business entities. In the end, this case revolves around the meaning of words in the asset purchase agreement. The parties chose New York law to govern the agreement. The general limitation-on-damages provision in the agreement was a two-edged sword designed to cut both ways. If U.S. Global had signed the agreement and then turned around and sold the assets to another company for a higher price, it is hard to imagine that Progress Energy would have agreed the general limitation-on-damages provision limits them to specific performance as the sole remedy.[2] If the parties truly intended to cut off entitlement to all general damages, they could have plainly and explicitly said so. If the parties intended to limit the remedy for breach of contract to specific performance, as Progress Energy contends, the parties could have written the asset purchase agreement that way.
Based on the foregoing, I would affirm the final judgment in U.S. Global’s favor.

. The federal government allowed the generation of synfuel tax credits for a limited period of time, and the length of time to litigate the case would make the effectiveness of specific performance questionable.