Binghamton Precast & Supply Corp. v Liberty Mut. Fire Ins. Co. (2020 NY Slip Op 02214)





Binghamton Precast & Supply Corp. v Liberty Mut. Fire Ins. Co.


2020 NY Slip Op 02214


Decided on April 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 9, 2020

527424

[*1]Binghamton Precast & Supply Corp., Respondent,
v
Liberty Mutual Fire Insurance Company, Appellant.

Calendar Date: February 19, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Finazzo Cossolini O'Leary Meola & Hager, LLC, New York City (Christopher S. Finazzo of counsel), for appellant.
Hinman, Howard & Kattell, LLP, Binghamton (Albert J. Millus Jr. of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Reynolds Fitzgerald, J.), entered August 20, 2018 in Broome County, which, among other things, granted plaintiff's cross motion for summary judgment.
Plaintiff, a manufacturer, seller and distributor of precast concrete products, was covered by an "Equipment Breakdown Insurance Policy" (hereinafter the policy) issued by defendant. In June 2015, plaintiff's concrete mixer broke down, causing an interruption of production until the mixer was repaired and restored to operation two days later. Shortly thereafter, plaintiff filed a claim for loss of business income.[FN1] Defendant declined to pay the claim, asserting that plaintiff had not demonstrated an actual loss of business income within the meaning of the policy.
In March 2016, plaintiff commenced this action for breach of contract. Defendant moved for summary judgment dismissing plaintiff's complaint, and plaintiff cross-moved for summary judgment and opposed defendant's motion. Supreme Court denied defendant's motion, granted plaintiff's cross motion, and awarded damages to plaintiff. Defendant appeals.
Plaintiff makes precast concrete products for the construction industry. According to the testimony of plaintiff's president, plaintiff does not sell its products from inventory but, instead, accepts custom orders in advance for specific products that it then manufactures according to a schedule planned around its contractual deadlines and limited capacity. Plaintiff avers that it must operate its plant at close to full capacity during the summer because of the seasonal nature of the construction industry and, thus, that the inability to use its concrete mixer for two days in early summer caused it to lose two days of production that could not be made up in that season and resulted in lost profits. Plaintiff submitted evidence of the lost production and its calculation of the resulting lost profits, and Supreme Court found that plaintiff thus established an actual loss of business income within the meaning of the policy. Defendant does not dispute that two days of production were lost, nor does it challenge the methodology by which plaintiff calculated its loss. Instead, it contends that the court erred in finding that plaintiff established a loss of business income because it did not show that it lost any specific sales as a result of the breakdown within the requisite time period after the breakdown occurred.
As pertinent here, the policy provided coverage for plaintiff's "actual loss of '[b]usiness [i]ncome' during the '[p]eriod of [r]estoration'" following an equipment breakdown, as well as for extra expenses incurred by operating the business during the restoration period.[FN2] The policy stated, "We will consider the experience of your business before the '[b]reakdown' and the probable experience you would have had without the '[b]reakdown' in determining the amount of our payment." "Business income" was defined to mean "[n]et income ([n]et [p]rofit or [l]oss before income taxes) that would have been earned or incurred," as well as normal operating expenses. We agree with Supreme Court that these provisions are not ambiguous [FN3] and that plaintiff's demonstration that it lost profits as a result of the two days of lost production was adequate to establish a loss of business income within the meaning of the policy.
"An insurance policy must be interpreted to give clear and unambiguous provisions their plain and ordinary meaning" (Wangerin v New York Cent. Mut. Fire Ins. Co., 111 AD3d 991, 992 [2013] [citations omitted]). Here, the policy's plain language expressly includes profits and losses in its broad definition of business income, but neither includes any reference to specific sales nor reveals any intent to narrow the policy's coverage in the manner that defendant now suggests. Likewise, there is no reference to specific sales in the broadly-constructed methodology set out in the policy for determining the amount of an insured's lost business income — that is, by examining the insured's experience before the breakdown and its probable experience if the breakdown had not occurred.[FN4]
"The purpose of business interruption insurance is to indemnify the insured against losses arising from inability to continue normal business operation and functions due to the damage sustained as a result of the hazard insured against" (Howard Stores Corp. v Foremost Ins. Co., 82 AD2d 398, 400 [1981] [citations omitted], affd 56 NY2d 991 [1982]; accord Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 194 [2008]; Yar-Lo, Inc. v Travelers Indem. Co., 130 AD3d 1402, 1403 [2015]). In interpreting such an insurance policy, "[t]he touchstone . . ., as with other contracts, is the reasonable expectation of the parties" (Throgs Neck Bagels v GA Ins. Co. of N.Y., 241 AD2d 66, 69 [1998]). To impose a requirement that an insured cannot recover for lost business income under defendant's policy unless it can demonstrate that an equipment breakdown caused a loss of specific sales during the relatively brief restoration period immediately after the breakdown would, in effect, prevent recovery under the policy by an insured whose business — like plaintiff's — consists of fulfilling contracts after they have been made, rather than upon sales following production. Such an outcome would not be consistent with an insured's reasonable expectations. Thus, we find that the plain language of the disputed provision cannot reasonably be interpreted as defendant argues, and "that Supreme Court's interpretation reflects a practical construction of the language used so that the reasonable expectations of the parties are realized" (Matter of Covel v Town of Peru, 123 AD3d 1244, 1246 [2014]) [internal quotation marks and citation omitted]; see generally Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d at 194-195; compare Bernstein Liebhard LLP v Sentinel Ins. Co., Ltd., 162 AD3d 605, 605-606 [2018], lv denied 32 NY3d 916 [2019] [business interruption policy did not cover contingency fees that an insured law firm claimed it would have received in future cases that it did not acquire because of a fire]).[FN5]
We reject defendant's further argument that plaintiff nevertheless failed to establish a loss of profits because the record reveals that it was able to reschedule the lost production in the next few working days. Plaintiff demonstrated that the rescheduled work necessarily displaced work that would otherwise have taken place on those days and, in turn, had to be rescheduled within the limits of plaintiff's contractual deadlines, limited capacity and the short duration of the construction season, such that the two days of lost production could not be replaced.[FN6]
We agree with defendant, however, that there is a triable issue of fact barring summary judgment regarding the amount of plaintiff's damages. Plaintiff satisfied its prima facie burden to establish this amount by submitting its calculation of the profits it lost as a result of the two-day business interruption, thus shifting the burden to defendant to raise issues of fact (see generally Roemer v Allstate Indem. Ins. Co., 163 AD3d 1324, 1325 [2018]). In so doing, defendant relied upon a policy provision that required plaintiff to reduce its losses by undertaking efforts to "[m]ake up for lost business within a reasonable period of time" and "[m]ake use of every reasonable means to reduce or avert loss, including . . . [w]orking extra time or overtime." Defendant argued that plaintiff failed to make up for the lost production by scheduling extra shifts or weekend work and, thus, failed to mitigate its losses as required by the policy.
Like any other policy provision, mitigation requirements in business interruption insurance policies must be enforced according to their terms (see e.g. Broad St., LLC v Gulf Ins. Co., 37 AD3d 126, 133 [2006]; Howard Stores Corp. v Foremost Ins. Co., 82 AD2d at 401-402). Here, plaintiff's president testified that it could not use extra shifts during the work week to make up for lost production due to the nature of its manufacturing process, and that various constraints related to that process and plaintiff's labor force made it so difficult to schedule weekend work that plaintiff rarely did so. Plaintiff thus limited most of the weekend work that it did schedule to small projects requiring only a few employees. Viewing the evidence in the light most favorable to defendant, we find that the reasonableness of plaintiff's decision to make up for the lost production during its normal work hours rather than by scheduling overtime shifts on subsequent weekends, as well as the effect of this decision on the amount of its damages, present factual issues that must be resolved by a factfinder (see NAB Const. Corp. v Consolidated Edison Co. of N.Y., 242 AD2d 480, 480 [1997]). Accordingly, plaintiff's cross motion for summary judgment should not have been granted.
Clark, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's cross motion for summary judgment; said motion denied; and, as so modified, affirmed.



Footnotes

Footnote 1: Plaintiff also filed a claim for the cost of repairing the mixer, which defendant paid and which is not at issue here.

Footnote 2: The parties agree that, under the terms of the policy, the period of restoration began when the concrete mixer broke and ended 30 days after the repairs were complete.

Footnote 3: We note that, if we had found any ambiguity in the policy's definition of business income, we would necessarily have resolved the ambiguity by construing the provision in plaintiff's favor (see e.g. Wangerin v New York Cent. Mut. Fire Ins. Co., 111 AD3d 991, 992 [2013]).

Footnote 4: Plaintiff's calculation of its lost profits was based upon this methodology; plaintiff demonstrated its production before, during and after the breakdown and applied its profit margin during this period to the lost production thus shown.

Footnote 5: Defendant failed to preserve its claims based upon a policy exclusion providing that it "will not pay for loss or damage caused directly or indirectly by . . . [a] delay in, or an interruption of, any business, manufacturing or processing activity except as provided by the '[b]usiness [i]ncome' and '[e]xtra [e]xpense' . . . [c]overages." The record does not reveal that defendant ever advised plaintiff that this exclusion affected its coverage or made such a claim in Supreme Court (see Bender v Peerless Ins. Co., 36 AD3d 1120, 1121 [2007]). Indeed, the record includes defendant's specific statements that its position was not based upon a denial of coverage but, instead, upon its theory that plaintiff had not established an actual loss of business income. Moreover, even if the claim had been preserved, the exclusion's plain language states that it does not apply where, as here, there is a claim for lost business income.

Footnote 6: During oral argument upon this appeal, defendant asserted for the first time that plaintiff's submissions demonstrate that its plant did not always operate at full capacity and, thus, that the lost production could have been rescheduled without displacing other work. As this argument was neither preserved in Supreme Court nor raised when plaintiff could have responded to it, it is not properly before this Court (see Bender v Peerless Ins. Co., 36 AD3d at 1121; see also Matter of Deuel v Dalton, 33 AD3d 1158, 1159 [2006]).