Achieve It Solutions, LLC v Lewis (2020 NY Slip Op 04137)





Achieve It Solutions, LLC v Lewis


2020 NY Slip Op 04137


Decided on July 22, 2020


Appellate Division, Second Department


Cohen, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 22, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JEFFREY A. COHEN
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2015-07319
 (Index No. 19655/12)

[*1]Achieve It Solutions, LLC, respondent,
v
Joseph Lewis, et al., defendants, Diagnostic Imaging Group, LLC, appellant.



APPEAL by the defendant Diagnostic Imaging Group, LLC, in an action, inter alia, to recover damages for breach of contract and tortious interference with contract, from a judgment of the Supreme Court (Emily Pines, J.), entered June 18, 2015, in Suffolk County. The judgment, insofar as appealed from, upon a decision of the same court dated April 22, 2015, made after a jury trial, is in favor of the plaintiff and against the defendant Diagnostic Imaging Group, LLC, in the principal sum of $557,000.



Epstein Becker & Green, P.C., New York, NY (John Houston Pope of counsel), for appellant. 
Agoglia, Holland & Agoglia, P.C., Jericho, NY (E. Kevin Agoglia of counsel), for respondent.



COHEN, J.


OPINION & ORDER
This appeal involves the question of whether the Supreme Court properly determined, after a jury trial, to hold the defendant Diagnostic Imaging Group, LLC (hereinafter DIG), jointly and severally liable for the damages awarded in favor of the plaintiff and against the defendant B1 Advanced, LLC (hereinafter B1 Advanced and, together with DIG, the defendants), on the cause of action alleging breach of contract. We hold that, under the circumstances of this case, the imposition of joint and several liability was improper.
I. Factual and Procedural History
A dispute arose between the plaintiff and B1 Advanced, among others, concerning an "Independent Contractor Agreement" dated January 9, 2008. Pursuant to that agreement, B1 Advanced was retained by the plaintiff to assist in implementing an accounting software program known as "SAP Business One" (hereinafter SAP) for the plaintiff's clients, which were small business owners. In around August 2009, B1 Advanced allegedly began performing work directly for one of the plaintiff's clients—DIG—and billing DIG directly for its services in violation of its agreement with the plaintiff.
In June 2012, the plaintiff commenced this action, asserting, insofar as relevant to this appeal, a cause of action to recover damages for breach of contract against B1 Advanced, and a cause of action to recover damages for tortious interference with contract against DIG. DIG answered and interposed a counterclaim against the plaintiff to recover damages for breach of contract arising out of an agreement entered into between DIG and the plaintiff dated August 28, 2008, concerning the installation of SAP at DIG's business.
A jury trial was held in January and February 2015. At the close of the evidence, a charge conference was held, during which the Supreme Court determined, over the plaintiff's [*2]objection, that since the contract between the plaintiff and B1 Advanced was terminable at will, the claim against DIG was one for tortious interference with prospective business relations. The court charged the jury, without objection, "[i]n each of these claims, whether it's the two Achieve It claims, one against B1 Advanced and one against DIG . . . each one is seeking monetary damages against the other . . . You decide . . . on the evidence presented and the rules of law . . . whether the claimant in each claim is entitled to recover from the party they are suing." The court then charged the jury, without objection, "if you get to the part of the [verdict] sheet for each party that is seeking monetary damages where they seek a number, I give you a line and a dollar sign and say set forth the amount of damages, if any, that the prevailing party on that claim is entitled to."
A special verdict sheet was submitted to the jury asking it to determine, inter alia, whether DIG "act[ed] with the intention of interfering with the ongoing business relationship between [the plaintiff and B1 Advanced]," whether "DIG intentionally interfere[d] with the business relationship between [the plaintiff and B1 Advanced] by the use of wrongful means," and whether "the business relationship between [the plaintiff and B1 Advanced would] have continued if DIG had not interfered." The verdict sheet also contained an interrogatory asking the jury to determine "the amount of monetary damages, if any, sustained by [the plaintiff] resulting from [ ] B1 Advanced's breach of the 1/9/08 contract," and a separate interrogatory asking the jury to determine "the amount of [the plaintiff's] damages, if any, that were sustained as a result of [ ] DIG's conduct."
On February 13, 2015, the jury returned a verdict in favor of the plaintiff and against B1 Advanced, awarding damages in the principal sum of $657,000, on the cause of action alleging breach of contract. The jury also found in favor of the plaintiff and against DIG, awarding damages in the principal sum of $60,000 on the cause of action alleging tortious interference with prospective business relations. With respect to DIG's counterclaim, the jury returned a verdict in favor of DIG and against the plaintiff, awarding damages in the principal sum of $100,000.
None of the parties moved pursuant to CPLR 4404 to set aside the jury verdict. Instead, the plaintiff submitted a proposed judgment to the Supreme Court, containing a provision stating that the verdict was "in favor of the plaintiff [and] against the defendants B1 Advanced . . . and [DIG] in the amount of . . . $717,000 . . . and said defendants being deemed jointly and severally liable." In a letter dated March 11, 2015, DIG objected to the proposed judgment on the ground that it did not conform to the jury verdict, which awarded it the net amount of $40,000. In response, the plaintiff sent a letter to the court dated March 27, 2015, requesting "by way of informal motion," that the court make "a determination with respect to joint and several liability of the defendants."
In a decision dated April 22, 2015, the Supreme Court determined, as a matter of law, that DIG and B1 Advanced were "jointly and severally liable for the full amount of damages arising from the breach," based on its finding that, "[a]t a minimum, a party found liable for tortious interference with a contract is liable for the damages arisen out of the breach of such contract," and, thereupon, set aside so much of the verdict as awarded damages against DIG in the sum of only $60,000. A judgment was subsequently entered, inter alia, in favor of the plaintiff and against DIG in the principal sum of $557,000, which reflects an offset by the amount of damages awarded to DIG on its counterclaim against the plaintiff.
After DIG appealed from the judgment, a panel of this Court granted that branch of a motion made by DIG which was for leave to omit the trial transcript from the record on appeal "upon [DIG's] representation that the only issues to be raised on the appeal relate to whether the Supreme Court properly imposed joint and several liability." Following oral argument, in response to a request from the panel of Justices hearing the appeal, DIG's counsel submitted copies of the transcripts of the charge conference, the court's jury charge, and the proceedings held in relation to the verdict sheet. These materials have been considered in resolving this appeal.
II. Legal Analysis
On appeal, DIG argues, inter alia, that "the contract breacher and tortious interferer each bear responsibility separately for the injury each caused" and that "[j]oint and several liability does not bridge tort law and contract law to impose shared liability as a matter of law." DIG also argues that even if it could be held jointly and severally liable with B1 Advanced, it was improper to do so after the jury rendered its verdict and in the absence of any motion pursuant to CPLR 4404.
The plaintiff contends that the Supreme Court "properly found that DIG's joint and several liability for damages in the amount of $6[57],000 arose as a matter of law, once the trier of fact determined that DIG tortiously interfered with the agreement that was breached by B1 Advanced." According to the plaintiff, the defendants' independent acts of wrongdoing caused "an [*3]indivisible and coextensive injury."
"Joint and several liability, primarily a tort law concept, imposes on each wrongdoer the responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss. The rationale for such liability is that the wrongdoers are considered part of a joint enterprise and a mutual agency such that the act of one is the act of all and liability for all that is done is visited upon each'" (Matter of Seagroatt Floral Co. [Riccardi], 78 NY2d 439, 448, quoting Ravo v Rogatnick, 70 NY2d 305, 309 [citation omitted]; see Hoffman v Horn, 157 AD3d 871, 873). There is a dearth of case law in this state holding one defendant, who was found liable for breach of contract, and another defendant, who was found liable for tortious interference with that contract, jointly and severally liable for a single damages award (see e.g. Matter of Reljic v Tullett Prebon Fin. Servs., LLC, 169 AD3d 532, 533; D. Owens Elec., Inc. v J.W. Mays, Inc., 61 Misc 3d 1225[A], 2018 NY Slip Op 51791[U], *12 [Sup Ct, Dutchess County]).
" That these are not the same or identical causes of action, but, rather, wholly separate and distinct legal wrongs, giving rise to different causes of action, has long been settled'" (North Shore-Long Id. Jewish Health Sys., Inc. v Aetna US Healthcare, Inc., 27 AD3d 439, 440, quoting Singleton Mgt. v Compere, 243 AD2d 213, 216). As set forth in the Restatement (Second) of Torts § 774A, Comment e, "[t]he fact that the plaintiff may have a cause of action against the person who has broken his [or her] contract does not prevent recovery against the defendant who has induced or otherwise caused the breach, or reduce the damages recoverable from him [or her]. The defendant and the contract breaker are both wrongdoers . . . and each is liable for the entire loss that he [or she] has caused" (citation omitted and emphasis added).
As a threshold matter, the transcripts provided to this Court reflect that the plaintiff never requested that B1 Advanced and DIG be held jointly and severally liable for a single award of damages. By failing to object to the court's charge, which omitted any instruction to the jury on joint and several liability, and by failing to object to the submission of separate interrogatories in the verdict sheet related to damages, the plaintiff consented to the computation of two damages awards, thereby waiving any claim that "a single damage amount should [have been] awarded" (see generally Goldman & Assoc., LLP v Golden, 115 AD3d 911, 913).
In any event, the Supreme Court should not have imposed joint and several liability postverdict based upon its theory that the award of damages against DIG, as a matter of law, could not be less than the award of damages against B1 Advanced. In reaching that determination, the court relied upon Hornstein v Podwitz (254 NY 443), a case which is distinguishable from the case at bar. In Hornstein, the issue before the Court of Appeals was whether the complaint stated a cause of action to recover damages for tortious interference with contract against the purchasers of certain property, who allegedly conspired with the owner of that property to deprive the plaintiff, a real estate broker, of his commissions. The Court of Appeals held that the defendants "committed a legal wrong which gave rise to a cause of action in favor of the plaintiff" and "[t]he fact that the plaintiff also has a cause of action against [the owner] for breach of contract does not prevent his having a cause of action in tort against them" (Hornstein v Podwitz, 254 NY at 449). The Court of Appeals then stated that, "[a]ll of the parties who induced the breach of . . . contract are jointly and severally liable for the commissions due the plaintiff" (id.)—not that the defendants who tortiously interfered with the ongoing business relationship between the plaintiff and the owner were jointly and severally liable with the owner for any damages arising out of the owner's breach of its contract with the plaintiff. Stated differently, in Hornstein, the Court of Appeals imposed joint and several liability upon those who committed the tort of tortious interference with contract. Here, since the agreement between the plaintiff and B1 Advanced was terminable at will, the theory of liability against DIG, as set forth in the verdict sheet submitted to the jury, was predicated on the distinct tort of tortious interference with prospective business relations, and not tortious interference with contract (see PJI 3:56 Comment I. Requirement of a Valid Contract; PJI.1, Comment, Contracts Terminable At Will; Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 108; Smith v Meridian Techs., Inc., 52 AD3d 685, 687).
Similarly, in Litras v Litras (254 AD2d 395), a case upon which the plaintiff relies, this Court held that, "[t]he verdict sheet reveals that the jury found that each of the three individual defendants and the defendant Dahill Funeral Home committed one of the underlying torts specified in the complaint, and that all of the defendants conspired to commit such tortious acts as part of a scheme to destroy the plaintiffs' business" and, therefore, "the defendants were jointly and severally liable for any compensatory and punitive damages awarded for the underlying torts" (id. at 396). [*4]Here, B1 Advanced was not found liable for committing a tort and the jury made no finding that B1 Advanced and DIG participated in a scheme or conspired to allegedly "deprive [the] plaintiff of [its] rightful billings." In fact, the Supreme Court previously dismissed the causes of action against DIG alleging prima facie tort, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty, and dismissed the cause of action against DIG and B1 Advanced sounding in civil conspiracy.
The jury determined that the plaintiff sustained damages in the amount of $60,000 resulting from DIG's interference with the plaintiff's prospective business relationship with B1 Advanced, and that the plaintiff sustained damages in the amount of $657,000 resulting from B1 Advanced's breach of contract. Contrary to the Supreme Court's determination, the damages arising out of DIG's tortious interference could, in fact, differ from the damages arising out of B1 Advanced's breach of contract. The jury assessed the amount of damages against DIG based on the plaintiff's loss of prospective profits resulting from DIG's tortious interference with the plaintiff's ongoing business relationship with B1 Advanced (see PJI.1, Comment, Contracts Terminable At Will; Madelblatt v Devon Stores, 132 AD2d 162, 168, citing 32 NY Jur, Interference § 40). Conversely, "[d]amages for breach of contract include general (or direct) damages, which compensate for the value of the promised performance, and consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach, such as lost profits" (Appliance Giant, Inc. v Columbia 90 Assoc., LLC, 8 AD3d 932, 933; see Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 192). The jury's apportionment of damages reflects its finding that DIG was not responsible for all of the damages caused by B1 Advanced's breach of contract.
Accordingly, under the circumstances of this case, the Supreme Court erred in determining postverdict to hold DIG and B1 Advanced jointly and severally liable for the principal sum of $657,000, and, thereupon, setting aside so much of the verdict as awarded damages against DIG in the sum of $60,000.
Finally, we note that the plaintiff's attempt to modify the damages awarded by the jury by submitting a proposed judgment to the Supreme Court that did not conform to the jury verdict and thereafter submitting correspondence as an "informal motion" is an improper substitute for a motion pursuant to CPLR 4404 and we do not condone that practice.
Thus, the judgment is reversed insofar as appealed from, on the law, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an amended judgment that conforms to the jury verdict, inter alia, awarding the plaintiff the principal sum of $60,000 against DIG and awarding DIG the principal sum of $100,000 against the plaintiff.
SCHEINKMAN, P.J., MALTESE and LASALLE, JJ., concur.
ORDERED that the judgment is reversed insofar as appealed from, on the law, with costs, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an amended judgment that conforms to the jury verdict, inter alia, awarding the plaintiff the principal sum of $60,000 against DIG and awarding DIG the principal sum of $100,000 against the plaintiff.
ENTER:
Aprilanne Agostino
Clerk of the Court